Anthony **MAURO**, Plaintiff,

v.

**SOUTHERN NEW ENGLAND TELECOMMUNICATIONS,** Defendant.

No. 3:96CV0016717 WWE.

United States District Court, D. Connecticut.

April 13, 1999.

David S. Rintoul, Rintoul & Rintoul, West Hartford, CT, for plaintiff.

Margaret P. Mason, Lori B. Alexander, Tyler, Cooper & Alcorn, New Haven, CT, Carole F. Wilder, New Haven, CT, for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Anthony Mauro, alleges that his former employer, Southern New England Telecommunications, Inc. ("SNET"), discriminated against him based on his age and retaliated against him after he reported a co-worker's misconduct.

In his three count complaint, Mr. Mauro asserts violations of the Age Discrimination in Employment Act ("ADEA"), wrongful discharge in violation of public policy, and breach of contract. SNET denies the allegations and moves for summary judgment. For the following reasons, defendant's motion for summary judgment will be granted.

### Background

In 1977 SNET hired Mr. Mauro as a staff engineer in its Design and Construction division. Mr. Mauro held this position until 1981 when he was promoted to the Communication Systems area.

From 1983 to 1994, Mr. Mauro was transferred to several different level-two managerial or specialist positions within SNET. In March, 1994, SNET underwent a corporate reorganization and transferred its building maintenance functions from its Network Services unit to SNET Real Estate, which was headed by Barbara Hampton. As a result, Mr. Mauro was transferred into a level-two position in SNET Real Estate's New Haven office.

In June, 1994, another reorganization took place. Ms. Hampton then transferred Mr. Mauro to another level-two position in SNET Real Estate's Meriden office. Manuel Becerra, a 47–year–old licensed engineer, was transferred to fill the vacancy that became available due to Mr. Mauro's transfer.

In the summer of 1994, John Grasso informed Mr. Mauro that some irregularities had occurred in the watch area of Bill Elsdon. Messrs. Grasso, Elsdon, and Mauro all held second level managerial positions with SNET Real Estate. On November 18, 1994, Messrs. Grasso and Mauro informed their supervisor, Ronald Graziani, of Mr. Elsdon's suspected wrongdoing. In January, 1995, Mr. Graziani asked for supporting documentation so that he could follow up with further investigation. Mr. Graziani later referred the matter to Ms. Hampton, who requested an immediate internal investigation. Mr. Mauro was interviewed about Mr. Elsdon by Corporate Security as part of this investigation.

In February, 1995, Ms. Hampton sought to reduce the costs of SNET Real Estate with another reorganization. She eliminated the three second level supervisor positions within SNET Real Estate held by Messrs. Mauro, Grasso, and Elsdon. She then reclassified the Building Supervisors at a higher pay scale level.

After the elimination of his position, Mr. Mauro learned that a level-one design position was open and several of his colleagues urged him to take it. Ms. Hampton avers that she created this position with the hope that Mr. Mauro would accept it and remain with SNET Real Estate. Mr. Mauro did accept that position, which he held from mid-March, 1995, to April, 1996. The position was classified as a level-one position although it paid the same salary as Mr. Mauro's former level-two position.

Mr. Grasso was also unable to find another level-two position and accepted a temporary level-one position.

Mr. Mauro states that Susan Agustyniak, his supervisor, told him that he would be considered for all level-two positions that became available. However, he did not apply for any other higher level position despite his knowledge that other people at the same level had been promoted within the company.

In June, 1995, Ms. Hampton hired Nancy Symons for a level-two position after Ms. Symons had responded to SNET's job advertisement.

On March 1, 1996, Ms. Hampton approved the transfer of Kathy Scappini into a level-two position in SNET Real Estate. The transfer enabled SNET to avoid terminating Ms. Scappini's employment.

In March, 1996, Mr. Mauro notified SNET that he would accept the early retirement package that SNET had offered all management employees. Mr. Mauro agreed to SNET's request that he extend

his departure date and continue to work for an additional month. In April, 1996, Mr. Mauro voluntarily terminated his employment and received the enhanced retirement package.

Subsequent to Mr. Mauro's departure, Ms. Hampton learned that Mr. Mauro believed that SNET had treated him unfairly. In response, Ms. Hampton offered Mr. Mauro a level-two position in her department. Mr. Mauro did not accept the position. He testified in his deposition that he might have considered it if the job had not been in design and required him to obtain a professional engineering license.

In February, 1997, Mr. Grasso was promoted from his level-one position to the level-three position formerly held by Mr. Graziani.

### Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett.,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106

S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### A. *Age Discrimination*

The Court must analyze this disparate treatment claim according to the burden shifting process established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). It is well settled that to establish a prima facie claim of discrimination, the plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was performing his or her duties satisfactorily; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, he must show that his termination was not made for legitimate reasons. *Thomas v. St. Francis Hospital and Medical Center,* 990 F.Supp. 81, 86 (D.Conn.1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Mr. Mauro asserts his age discrimination claims on the basis of (1) his June, 1994 transfer to SNET Real Estate and the elimination of that position in February, 1995, which resulted in his acceptance of a lower level position, (2) SNET's failure to select him for two second level positions that became available in his department, and (3) his retirement, which he claims was necessitated by SNET's discriminatory conduct. For the following reasons,

summary judgment will be granted in defendant's favor on all of Mr. Mauro's age discrimination claims alleged in count one.

1. *Mr. Mauro's Transfer to Meriden, the Elimination of That Position, and His Acceptance of A Level–One Position*

■ The parties do not dispute that Mr. Mauro falls within the protected class. However, SNET argues that Mr. Mauro cannot establish a prima facie case of age discrimination because he did not suffer any adverse employment decision. However, Mr. Mauro has established a prima facie case. He was transferred to a position that was subsequently eliminated. At the same time, a younger manager, Manuel Becerra, was placed in his former job, and this position was not eliminated. Construing all facts in his favor, Mr. Mauro has established an adverse employment action under circumstances giving rise to an inference of age discrimination.

■ SNET asserts as a legitimate business reason that it transferred Mr. Mauro to the Meriden office and subsequently eliminated his new position as a result of two separate reorganizations. Ms. Hampton, the decision maker, decided not to transfer Mr. Becerra to Meriden because he lacked field office and management experience. Mr. Mauro was qualified for the position in Meriden due to his past field office experience and familiarity with the Meriden Data Center. Furthermore, Ms. Hampton knew that Mr. Mauro lived closer to Meriden than New Haven.

■ Mr. Mauro claims that SNET's reasons are pretextual because they make no sense. A plaintiff may prove that the proffered reason is pretextual by demonstrating that age was more likely than not the real reason for the adverse employment action or by showing that the proffered explanation is unworthy of credence. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 108–109 (2d Cir.1994).

■ Mr. Mauro asserts that he never complained about his commute to New Haven, that Mr. Becerra actually had more recent experience with the Meriden Data Center, and that he had little property management or facilities experience. However, the Court may not second guess business decisions, and evidence that an employer made a poor business judgment is generally insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988). An employer is not prohibited from making an employment decision based on non-discriminatory considerations no matter how subjective or unsound. *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir.1984). The fact that Ms. Hampton's reasoning did not make sense to Mr. Mauro does not establish that Mr. Mauro was transferred due to considerations of his age.

■ Nor does the subsequent elimination of Mr. Mauro's Meriden position in February, 1995, indicate that a discriminatory animus motivated the transfer decision. A decision to transfer is essentially neutral unless the plaintiff can show that the decision maker knew that the new position would be later eliminated. *See Viola v. Philips Medical Systems of N.A.*, 42 F.3d 712, 718 (2d Cir.1994). In this instance, Ms. Hampton did not decide to eliminate Mr. Mauro's Meriden position until eight months *after* his transfer.

Mr. Mauro has failed to establish that Mr. Mauro's age was a factor in Ms. Hampton's decision to retain Mr. Becerra in New Haven but to eliminate the three positions in Meriden. Similarly, Mr. Mauro has not shown any nexus between age discrimination and SNET's offer of the level-one position after the elimination of his Meriden level-two position. In fact, Mr. Mauro's claim rests on speculation and the conclusory assertion that Ms. Hampton was motivated by an age bias.

### 2. SNET'S Failure to Offer Mr. Mauro Level–Two Positions

In his complaint, Mr. Mauro claims that SNET added two second level positions, which became available after February, 1995. SNET filled these position with Nancy Symons and Kathy Scappini, whom Mr. Mauro alleges were both younger and less qualified than he. Mr. Mauro asserts that SNET did not offer him these positions because of SNET's age bias.

█ In a claim of age discrimination based on a hiring decision, a plaintiff within the protected class raises the inference of age discrimination by establishing that he applied and was qualified for the job; that he was not hired despite his qualifications; and that the employer hired a substantially younger person. *Reed v. Signode Corp.*, 652 F.Supp. 129, 133–134 (D.Conn.1986).

█ In this instance, Mr. Mauro admits that he never applied for either position. There is no evidence that Ms. Agustyniak informed him that he need not apply in order to be considered for a level-two position. Therefore, Mr. Mauro cannot satisfy the prima facie case to raise the inference of age discrimination.

In his opposition, Mr. Mauro also claims that SNET should have offered him the job of Manager–Building Construction, which became available in September, 1997. Although the position became available almost sixteen months after his retirement, Mr. Mauro asserts that SNET should have offered it to him rather than filling it with Janet Widman.

█ Mr. Mauro failed to allege this claim in his complaint, and it is inappropriate to raise new claims for the first time in an opposition to summary judgment. *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997). Accordingly, the Court will not consider Mr. Mauro's claim related to SNET's hiring of Janet Widman.

### 3. Mr. Mauro's Retirement

Mr. Mauro alleges that he retired in April, 1996 because SNET had destroyed his career and career prospects due to its acts of age discrimination. The Court will analyze this allegation as a claim of constructive discharge resulting from age discrimination.

█ A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993). A claim of constructive discharge does not result from evidence that the employee disagreed with the employer's criticisms of his work, that he did not receive a raise, or that he preferred not to continue working for that employer.

█ In this instance, Mr. Mauro chose to retire because he was dissatisfied with his level-one position and because he wanted to disassociate himself with his co-workers prior to bringing a lawsuit against SNET. However, it is well established that job dissatisfaction is not enough to support a constructive discharge claim. *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360 (2d Cir.1993). Furthermore, Mr. Mauro has failed to establish any act in which SNET discriminated against him on the basis of age. Accordingly, the circumstances of Mr. Mauro's retirement do not give rise to an inference of either constructive discharge or age discrimination.

### B. Wrongful Discharge In Violation of Public Policy

In count two, Mr. Mauro alleges wrongful discharge in violation of public policy. Mr. Mauro claims that SNET retaliated against him for his report of Mr. Elsdon's misconduct by eliminating his Meriden position.

█ In order to establish the tort of wrongful discharge, Mr. Mauro must demonstrate that SNET discharged him for a reason in violation of public policy. *Sheets*

*v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 472, 427 A.2d 385 (1980). SNET asserts that Mr. Mauro was not discharged and that his report of Mr. Elsdon's misconduct does not implicate a public policy. Regardless of the merits of these arguments, Mr. Mauro's wrongful discharge claim will fail.

██ He has adduced no evidence that Ms. Hampton decided to eliminate the Meriden level-two positions because she sought to retaliate against him for his role in the report. Further, Ms. Hampton has averred that she learned of Mr. Mauro's involvement in the report of Mr. Elsdon's conduct *after* she had made the decision to eliminate the Meriden positions.

Mr. Mauro claims that a question of fact exists as to when Ms. Hampton learned of Mr. Mauro's role in the report. However, he offers only speculation as to how she might have learned of his involvement sometime earlier.

Furthermore, the Court is unpersuaded that Ms. Hampton had the motivation to retaliate against Mr. Mauro in response to the report. Mr. Mauro claims that the report and resulting investigation reflected badly on Ms. Hampton. To support this assertion, he points out that Ms. Hampton recalled in her deposition testimony that her supervisor, Donald Shassian, had once referred to her department as a cesspool. However, the context of Mr. Shassian's comment does not demonstrate that Ms. Hampton had reason to retaliate against Mr. Mauro. Further, Mr. Shassian avers that the investigation into Mr. Elsdon's conduct in no way reflected badly on Ms. Hampton or her department. Accordingly, summary judgment will be granted on this count in favor of SNET.

### C. *Breach of Contract*

In count three, Mr. Mauro claims that SNET's alleged retaliation constituted a breach of contract pursuant to SNET's employee manual. The manual prescribes certain standards of conduct and prohibits reprisals against employees acting in good faith to report violations of those standards. Since Mr. Mauro has not demonstrated that SNET retaliated against him as discussed relative to count two, count three will also fail.

### Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment [Doc. No. # 27] is GRANTED. The Clerk is directed to close this case.

SO ORDERED.