Anthony MAURO, Plaintiff–Appellant,

v.

**SOUTHERN NEW ENGLAND TELECOMMUNICATIONS, INC., Defendant–Appellee.**

**Docket No. 99–7930**

United States Court of Appeals, Second Circuit.

Argued March 16, 2000

Decided March 30, 2000

385

David S. Rintoul, Rintoul & Rintoul, Glastonbury, CT, for plaintiff-appellant.

Lori B. Alexander, Tyler, Cooper & Alcorn, LLP, New Haven, CT (Deborah De-Hart Cannavino, on the brief), for defendant-appellee.

Before: CABRANES and SOTOMAYOR, Circuit Judges, and TRAGER, District Judge.[*]

PER CURIAM:

Plaintiff-appellant Anthony Mauro appeals from a judgment entered on April 16, 1999, granting summary judgment in favor of defendant-appellee Southern New England Telecommunications, Inc. ("SNET") on Mauro's claims of age discrimination, public policy wrongful discharge, and breach of contract. *See Mauro v. Southern New England Telecomm.*, 46 F.Supp.2d 181 (D.Conn.1999). We find that the court erred in granting summary judgment on Mauro's failure to promote claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("the ADEA"), on the ground that Mauro never applied for the positions he alleges SNET filled with younger people. We nevertheless affirm the dismissal of his ADEA claim on the alternative ground that Mauro has not shown that SNET's proffered reasons for selecting others to fill those positions were a pretext for age discrimination. We further affirm summary judgment on Mauro's state law claims of public policy wrongful discharge and breach of contract for substantially the reasons stated by the district court.

### I.

Anthony Mauro worked at SNET from 1977 until his retirement in 1996. In 1994,

---

[*] The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

when the events giving rise to this action took place, he worked as a Manager of Building Operations in SNET Real Estate. Sometime during 1994, Mauro and a co-worker, John Grasso, observed irregularities in the transactions arranged by a third co-worker, Bill Elsdon, with certain SNET contractors. Mauro and Grasso reported their suspicions to their supervisor, who referred the matter to Barbara Hampton, the head of SNET Real Estate. An internal investigation subsequently revealed improprieties in Elsdon's awarding and billing of contracts.

In February 1995, Hampton implemented a reorganization of SNET Real Estate that eliminated Mauro's, Grasso's and Elsdon's positions. Mauro, who up until that point had been working in a "Level Two" job, moved into a design position that paid the same salary as his former position but was classified as a "Level One" position. Mauro testified that his supervisor, Susan Augustyniak, informed him that the company would consider him for Level Two jobs as they became available. Although two such jobs opened up over the next year, SNET hired two other individuals for the positions. Mauro—who was 56 at the time—claims that both of these employees, Nancy Symons and Kathy Scappini, were younger than he was. In April 1996, Mauro accepted an early retirement package and left SNET.

On June 6, 1996, Mauro filed a complaint with the Connecticut Commission on Human Rights and Opportunities, claiming that SNET had discriminated against him based on his age by failing to promote him

to the two Level Two positions that became available following his transfer to a Level One job. Mauro subsequently filed the instant action in federal court, claiming that the defendant had discriminated against him in violation of the ADEA. Mauro's complaint also alleged that SNET discharged him in retaliation for reporting Elsdon's wrongdoing and that, under Connecticut law, such treatment constituted both "public policy wrongful discharge" and a breach of its employment contract with Mauro. On April 16, 1999, the district court granted summary judgment to SNET on all claims. This appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir.1998). To establish a prima facie case for discriminatory failure to promote, a plaintiff must demonstrate that: 1) he is a member of a protected class; 2) he applied for promotion to a position for which he was qualified; 3) he was rejected for the position; and 4) the employer kept the position open and continued to seek applicants. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir.1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The district court found that Mauro had failed to meet his prima facie burden because he had not shown that he applied for either of the two positions that form the basis of his failure to promote claim.[1] We disagree.

---

1. After SNET moved for summary judgment, Mauro also claimed in his opposition papers that SNET had failed to hire him for a third Level Two position that opened up in September 1997, more than a year after Mauro resigned from SNET. Because Mauro did not include this claim in his complaint, the district court refused to consider it. We will not disturb this decision on appeal. Although Mauro could not have known about the September 1997 position when he filed this lawsuit in August 1996, he never moved to amend his complaint to add this new claim. Moreover, even after the court's decision on

summary judgment alerted him to the fact that his pleadings were deficient in this regard, he did not raise the issue in a motion for reconsideration. In these circumstances, the district court did not err in refusing to consider any claim relating to the third Level Two job. *Cf. Grain Traders, Inc. v. Citibank N.A.*, 160 F.3d 97, 105–06 (2d Cir.1998) (affirming district court's refusal to consider claim that "could not have been pleaded in the complaint, given that it occurred after the complaint was filed," because the plaintiff "did not seek leave to file an amended complaint or to file a supplemental pleading"); *In*

Although we held in *Brown* that a plaintiff alleging failure to promote ordinarily must show that he or she applied for the specific job or jobs at issue, *see id.* at 710, that requirement does not apply where, as here, the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them. In such a situation, requiring the plaintiff to show that he or she applied for the specific jobs at issue would be unrealistic, as an employee by definition cannot apply for a job that he or she does not know exists.

In this case, the record suggests that Mauro clearly indicated his interest in a promotion to a Level Two position and that SNET promised him that he would receive a Level Two job as soon as one became available. The record also indicates, however, that when two Level Two jobs opened, SNET hand-picked individuals to fill those positions without informing Mauro that the jobs were available. SNET acknowledges that it never posted one of the two positions, which, according to Hampton, the company created for a particular employee to prevent her layoff from the company. With respect to the other position, because the record reveals a genuine factual dispute as to whether SNET did in fact post the job when it became available, for the purposes of summary judgment we must assume that SNET failed to post the second job as well. *See Distasio,* 157 F.3d at 61 (noting that in reviewing a grant of summary judgment, the court must draw all available inferences in favor of the non-moving party). Unlike in *Brown,* therefore, where the plaintiff "concede[d] that some positions ... were posted, albeit infrequently," *see* 163 F.3d at 710, the record here could allow a jury to conclude that SNET knew of Mauro's interest in being promoted to a Level Two job but nonetheless failed to make him aware of any promotion opportunities to those positions as they arose.

This case thus presents the factual scenario that *Brown* itself suggested might suffice to relieve the plaintiff of the burden of showing that he applied for the promotion at issue. *See id.* ("[The plaintiff] does not charge, for example, that [the defendant] refused to accept individuals for positions or hand-picked individuals for promotion to a position without considering applicants.") Accordingly, we hold that Mauro's failure to apply for promotion following his transfer to a Level One job in 1995 would not have precluded him, as a matter of law, from establishing a prima facie case of age discrimination.

Assuming *arguendo* that Mauro has met the remaining elements of his prima facie case, we nonetheless find that summary judgment was appropriate on his failure to promote claim under the ADEA.[2] In response to Mauro's claim of age discrimination, SNET proffered legitimate, non-discriminatory reasons for placing both Symons and Scappini into their respective Level Two jobs. Specifically, Hampton testified that Symons's job, which involved consolidating SNET's training centers, required "someone with expertise in planning and utilizing property, space, and resources," and that Symons had extensive experience in this area. With regard to Scappini's position, which

---

re *Am. Express Co. Shareholder Litig.,* 39 F.3d 395, 402 (2d Cir.1994) (affirming district court's *sua sponte* dismissal without granting leave to replead where plaintiffs "did not seek leave to replead in the district court in their opposition papers to defendants' motion to dismiss, by way of a formal motion, or by way of a motion for reconsideration or to alter the judgment after the district court dismissed their claims").

**2.** Although the district court did not consider other grounds for granting summary judgment, " '[w]e may, of course, affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely.' " *Name.Space, Inc. v. Network Solutions, Inc.,* 202 F.3d 573, 584 (2d Cir.2000) (quoting *Cromwell Assocs. v. Oliver Cromwell Owners, Inc.,* 941 F.2d 107, 111 (2d Cir.1991)).

involved financial and tax analysis, Hampton testified that SNET created the job specifically for Scappini in order to prevent her from being laid off and that Scappini was well-qualified for this type of work. Mauro has offered no evidence that these reasons were pretextual, nor has he produced any evidence that age discrimination in any way motivated SNET's failure to promote him. *See Fisher v. Vassar College,* 114 F.3d 1332, 1338–39 (2d Cir.1997) (en banc) (holding that in order to prevail on a claim of employment discrimination, a plaintiff must show that the defendant's proffered reason for the employment decision was a pretext for discrimination). Accordingly, the district court did not err in granting summary judgment to SNET on Mauro's age discrimination claim.

## III.

The district court also granted summary judgment in favor of SNET on Mauro's state law claims of public policy wrongful discharge and breach of contract. On appeal, Mauro argues that the court erred in exercising supplemental jurisdiction over these claims and that, on the merits, summary judgment was improper because the record reveals a genuine factual dispute as to whether SNET retaliated against him, in violation either of public policy or an employment contract, for reporting Elsdon's wrongdoing. We review a district court's exercise of supplemental jurisdiction for abuse of discretion, *see Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994), and find here that the court did not err in retaining jurisdiction over Mauro's state claims after dismissing his sole

federal cause of action. Declining jurisdiction over the state-law claims in this case would have furthered neither fairness nor judicial efficiency, nor did those causes of action require the district court to resolve any novel or unsettled issues of state law.[3] *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (noting that in determining whether to exercise supplemental jurisdiction, a court should consider judicial economy, convenience, fairness, and comity); *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir.1990) (finding supplemental jurisdiction appropriate where the case "merely applies recently settled [state law] and does not involve novel legal questions").

On the merits of Mauro's state-law claims, we affirm the grant of summary judgment in favor of SNET for substantially the reasons stated by the district court: namely, that Mauro has not produced evidence showing that SNET retaliated against him for reporting Elsdon's wrongdoing. *See Mauro,* 46 F.Supp.2d at 186–87.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court granting summary judgment to SNET on all claims.

**3.** Although Mauro relies on *Burnham v. Karl and Gelb, P.C.,* 252 Conn. 153, 745 A.2d 178 (2000), in arguing that the law on public policy wrongful discharge in Connecticut is "currently developing," and therefore that supplemental jurisdiction was inappropriate, *Burnham* does not affect Mauro's state law claims. The Connecticut Supreme Court in *Burnham* held, *inter alia,* that a plaintiff may not bring a public policy wrongful discharge claim if he has an available statutory remedy.

*See id.* at 158, 745 A.2d 178. Because the district court concluded that Mauro showed no public policy violation because he could not establish retaliation, however, it did not need to consider whether a statutory remedy would have precluded Mauro from stating a common-law claim for public policy wrongful discharge. Accordingly, *Burnham* does not render Connecticut law "unsettled" for any purposes relevant to the disposition of this case.