Elna HOFFMAN, et al., Plaintiffs,

v.

HONDA OF AMERICA MFG.,
INC., Defendant.

No. C–3–97–248.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 8, 2000.

Robert Franklin Laufman, Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Stanley Morris Chesley, Robert Alan Steinberg, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Michael Jay O'Hara, O'Hara Ruberg Taylor Sloan & Sergent, Covington, KY, for plaintiffs.

James A. Wilson, Jr., Mary Ellen Fairfield, Vorys Sater Seymour & Pease, Columbus, OH, for defendants.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO STRIKE (DOC. # 162); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO DISMISS (DOC. # 179)

RICE, Chief Judge.

The Plaintiffs bring this litigation as a putative class action, on behalf of themselves and all females who have applied for positions or who have been employed at Defendant's plants in Anna, Marysville and East Liberty, Ohio. Plaintiffs' Third Amended Complaint (Doc. # 177) at ¶ 1. In that pleading, the Plaintiffs set forth three claims for relief. In the First Claim for Relief, the Plaintiffs allege that the Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Chapter 4112 of the Ohio Revised Code, by engaging in "a pattern and practice of discriminating against and retaliating against plaintiffs in awarding work assignments and skilled positions, in transfers, in promotions, and in making reasonable accommodations for injured plaintiffs, all due to their gender." *Id.* at ¶ 72. In their Second Claim for Relief, the Plaintiffs set forth a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, asserting that the Defendant engaged in a pattern and practice of discriminating against, retaliating against and otherwise interfering with their efforts to obtain benefits under the Defendant's employee benefit plans. *Id.* at ¶ 74. In the Third Claim for Relief, the Plaintiffs set forth a claim under the common law of Ohio, alleging that the Defendant has violated the public policy of this state by discriminating and retaliating against them, because they have exercised their rights to obtain workers' compensation. *Id.* at ¶ 76.

On December 6, 7 and 8, 1999, this Court conducted an oral and evidentiary hearing on the Plaintiffs' Supplemental Renewed Class Certification Motion, Motion to Bifurcate Trials, Motion to Issue Class Notice and Motion to Add Class Representative (Doc. # 181). Pursuant to procedures previously established by the Court, only the Plaintiffs' case-in-chief, pertaining to their request that this litigation be certified as a class action, was heard during those days. If the Court should conclude that the Plaintiffs have submitted sufficient evidence which, if unrebutted, would warrant certification, the Defendant will be afforded the opportunity to obtain its own expert witnesses and to present its evidence opposing same.[1] Thus, the Court promised the parties a decision in which it would either conclude that this litigation cannot be maintained as a class action, or indicate that, before such a decision could be reached, the Defendant would be required to put on its evidence and the Plaintiffs afforded the opportunity of presenting their rebuttal case.

At the conclusion of that hearing, the Court set forth procedures, including a request that the parties identify any pending motions which needed to be resolved before the Court issues the above-described decision. The Defendant has acceded to the Court's request by identifying a number of matters which must be addressed, including Defendant's Motion to Strike (Doc. # 162) and Motion to Dismiss (Doc. # 179). Herein, this Court rules upon those motions, in the above order.[2]

*I. Defendant's Motion to Strike Rule 23(b)(3) Class Certification Claim (Doc. # 162)*

In their initial Complaint (Doc. # 1), the Plaintiffs alleged that this litigation could be maintained as a class action pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure. However, when Plaintiffs subsequently sought leave to file an

---

1. The procedure established by this Court is somewhat analogous to Fed.R.Civ.P. 52(c), which permits a court to issue judgment on partial findings in a bench trial, after a party has had the opportunity to be heard on an issue.

2. By separate entry, the Court will decide whether to overrule the Plaintiffs' request for class

certification or to require the second phase of the hearing on that request to go forward. The Court will also resolve the issue of whether to permit the Plaintiffs to add a class representative and whether to strike the testimony of Dr. Phillip Way.

amended complaint, they indicated that they would withdraw their request that this litigation be certified in accordance with Rule 23(b)(3). *See* Doc. # 28. The Court granted the Plaintiffs leave to amend, and their Second Amended Complaint did not contain allegations that this litigation could be certified in accordance with Rule 23(b)(3). Rather, they merely alleged that this litigation could be certified in accordance with Rule 23(b)(1) and (2). During a lengthy discovery conference conducted between the Court and counsel on Saturday, June 27, 1998, Defendant raised the issue of whether it was possible to certify this litigation under Rule 23(b)(2), in light of the Fifth Circuit's decision in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998). In response to Defendant's contention, Plaintiffs indicated that they might wish to reassert their allegation that Rule 23(b)(3) was an appropriate vehicle for certification of this litigation. The Court directed the parties to brief the issues of whether *Allison* prevented this litigation from being certified under Rule 23(b)(2), as a matter of law, and whether the Plaintiffs should be permitted to amend their most recent pleading to reassert allegations concerning Rule 23(b)(3). *See* Doc. # 88 at 9. Although the parties addressed the issue of the applicability of *Allison,* the Plaintiffs did not request that they be permitted to amend their Second Amended Complaint, in order to include allegations regarding Rule 23(b)(3).

On July 9, 1999, Plaintiffs' Renewed Class Certification Motion, Motion to Bifurcate Trials, Motion to Issue Class Notice and Motion to Add Class Representative was docketed. *See* Doc. # 141. Therein, the Plaintiffs argued that this litigation could be certified under Rule 23(b)(3). Those arguments are also set forth in Plaintiffs' Supplemental Renewed Class Certification Motion, Motion to Bifurcate Trials, Motion to Issue Class Notice and Motion to Add Class Representative (Doc. # 181).[3] In its Motion to Strike Rule 23(b)(3) Class Certification Claim (Doc. # 162), the Defendant requests that the Court strike the Plaintiffs' arguments relating to Rule 23(b)(3), because the Plaintiffs have failed to abide by the Court's directive during the June 27th discovery conference to raise the issue of Rule 23(b)(3) in its memorandum relating to *Allison.*[4] The Defendant argues that the Plaintiffs' failure in that regard has caused it to suffer prejudice. In particular, the Defendant contends that, during depositions, it did not question the named Plaintiffs concerning the injuries, which they individually suffered as a result of its alleged unlawful conduct. According to the Defendant, such questioning would have provided evidentiary support for the argument that this Court should not certify this litigation under Rule 23(b)(3), since that Rule is most appropriately employed in instances where the plaintiffs' damages are small. *See* Doc. # 162 at 5.[5] In addition, the Defendant contends that evidence of the named Plaintiffs' individual damages would be relevant to one of the central inquiries under Rule 23(b)(3), i.e., whether the common issues of law and fact predominate over such questions that affect only the individual members of the putative class. Showing that the damages suffered by each named Plaintiff are unique, the Defendant could argue that common issues do not predominate.

---

3. This Court has previously noted that the Plaintiffs' renewed and supplemental renewed motions differ only in that the supplemental renewed motion corrected statistical calculations which had been prepared by Dr. Phillip Way. *See* Doc. # 219.

4. Although the Defendant's motion is directed at the Plaintiffs' Renewed Class Certification Motion, Motion to Bifurcate Trials, Motion to Issue Class Notice and Motion to Add Class Representative (Doc. # 141), the Court treats that motion as if it had been directed at their Supplemental Renewed Class Certification Motion, Motion to Bifurcate Trials, Motion to Issue Class Notice and Motion to Add Class Representative (Doc.

# 181). As is indicated above (*see* footnote 3), the two motions differ only with respect to the statistical calculations by Dr. Phillip Way.

5. In support of that assertion, the Defendant cites *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), wherein the Supreme Court indicated that "[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at 617, 117 S.Ct. 2231 (internal quotation marks and citation omitted).

The Court accepts that the Defendant failed to question the named Plaintiffs on the question of their individual damages, because the Plaintiffs, despite this Court's directive, did not request that they be permitted to add allegations concerning Rule 23(b)(3), in the manner as directed by the Court. Nevertheless, it cannot agree that the lack of such questioning serves as the basis for preventing the Plaintiffs' from basing their request for certification on Rule 23(b)(3), since this Court cannot conclude that the Defendant has suffered prejudice as a result. This Court, *at the Defendant's request*, has established a bifurcated procedure to determine whether to certify this litigation. As a consequence, the Defendant has yet to put on its evidence opposing certification. If the Court concludes that the second phase of the hearing must go forward, it will permit the Defendant to conduct brief, telephone depositions of the named Plaintiffs in order to inquire into the damages each may have suffered. In other words, the Defendant will be afforded the opportunity to conduct discovery necessary to support its assertion that this litigation cannot be certified pursuant to Rule 23(b)(3), because the Plaintiffs' individual damages are too large and/or differ too greatly to support certification under Rule 23(b)(3). Thus, the Court will not consider whether this litigation may be certified as a class action, under that provision of the Rules of Civil Procedure, without the Defendant having had the opportunity to question the named Plaintiffs about their individual damages and to present such evidence to the Court. Additionally, the Court notes that counsel for the Defendant has been able to brief the issue of whether this litigation should be certified under Rule 23(b)(3), despite the fact that the named Plaintiffs were not questioned on their individual damage claims. *See* Doc. # 216. Therefore, the Court concludes that the Defendant has not and will not suffer the prejudice it fears, if this Court declines to strike the Plaintiffs' request for certification pursuant to Rule 23(b)(3).[6]

Accordingly, based upon the foregoing, the Court overrules the Defendant's Motion to Strike Rule 23(b)(3) Class Certification Claim (Doc. # 162).

## II. Defendant's Motion to Dismiss (Doc. # 179)

With this motion, the Defendant argues that this Court must dismiss Plaintiffs' claim arising out of an alleged discriminatory failure to promote, because they have failed to allege properly that they had sought and had been denied promotions. On September 23, 1999, this Court entered a Decision in which it sustained the Defendant's Supplemental Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. # 116). *See* Doc. # 167. With that motion, the Defendant, relying upon the decision of the Second Circuit in *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2nd Cir.1998),[7] argued that the Plaintiffs

---

6. The Court also rejects the Defendant's argument that it should strike the Plaintiffs' request for certification under Rule 23(b)(3), because they failed to comply with the Court's directive that the issue be raised in memoranda addressing *Allison*. Although this Court cannot approve of that failure by the Plaintiffs, it is not willing to strike their request for certification under Rule 23(b)(3), in the absence of prejudice to the Defendant.

7. Therein, the Second Circuit affirmed the dismissal of the plaintiff's claim that she had been discriminated against on the basis of her race, because she had failed to allege that she had applied for a position for which she was qualified. Although the Sixth Circuit had not addressed the precise issue decided by the Second Circuit in *Brown*, it did address a similar argument in *Grant v. Harcourt Brace College Publishers*, 1999 WL 717982 (6th Cir.1999). Therein, the plaintiff alleged that the defendant had dis-

criminated against him on the basis of his age by failing to rehire him after he had been laid off in a reduction in force. The Sixth Circuit affirmed the grant of summary judgment in favor of the defendant, concluding that the evidence failed to raise a genuine issue of material fact concerning an element of plaintiff's *prima facie* case of discrimination, since there was no evidence that he had followed the defendant's procedures for applying for the position in question. The Sixth Circuit has also held that a plaintiff must have alleged the elements of his *prima facie* case of discrimination, in order to survive a motion to dismiss under Rule 12(b)(6). *See e.g., Andrews v. State of Ohio*, 104 F.3d 803 (6th Cir.1997) (affirming decision of District Court, dismissing plaintiff's claim of disability discrimination, for failure to state a claim upon which relief can be granted, because he had failed to allege that he was disabled). As did the Second Circuit in *Brown*, Ohio courts have concluded that a plaintiff cannot establish a *prima facie* case of failure-

had failed to set forth a *prima facie* case of failure to promote, because they had not alleged that they had applied for specific promotions. In response, the Plaintiffs argued, *inter alia,* they should be excused from the requirement of having to plead that they applied for promotions to specific positions, because Defendant, as a general rule, does not post vacant positions and, further, that the only method for applying for a promotion is for an employee to check a box on her annual evaluation. Although the Court agreed in the abstract with Plaintiffs' argument that failure to post promotions would excuse the Plaintiffs from alleging that they had applied for a particular position, it noted that the Plaintiffs' had failed to allege as much in their Second Amended Complaint. As a consequence, the Court concluded that the Plaintiffs had failed to plead a *prima facie* case of discrimination, arising out of the Defendant's alleged failure to promote female employees, because they had failed to allege that they had applied for promotions. However, the Court afforded Plaintiffs the opportunity of filing a further amended complaint, alleging either: 1) that one or more or all of them applied for specific promotions, only to be denied because of her or their sex; or 2) that the Defendant failed to post promotions and either they had no knowledge of the positions, or they made an effort to apply for those promotions through an informal procedure endorsed by the Defendant. The Plaintiffs have filed such a pleading (*see* Doc. # 177), and the Defendant now argues that the Court must dismiss the Plaintiffs' failure to promote claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because their Third Amended Complaint has failed to comply with this Court's directive. As a means of analysis, the Court will initially set forth the standards which are applicable to motions to dismiss, following which it will discuss the parties arguments in support of and in opposition to the instant such motion.

In *In re DeLorean Motor Co.,* 991 F.2d 1236 (6th Cir.1993), the Sixth Circuit restated the standards which govern motions to dismiss for failure to state a claim upon which relief can be granted, under Rule 12(b)(6):

> We review dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on a *de novo* basis. *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). This Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *Id.* While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id.* (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984)), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting *In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981)).

*Id.* at 1239–40. *See also, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81

to-promote discrimination, if she failed to apply for the promotion. *See Williams v. Time Warner Cable,* 1998 WL 332937 (Ohio App.1998) ("Having failed to apply for the promotion, [plaintiff] failed also to make a *prima facie* case of discrimination in the company's decision to promote someone else."). The Sixth Circuit has also held

that applying for a position for which she was qualified is an element of a plaintiff's *prima facie* case in a failure-to-promote lawsuit. *See e.g., Allen v. Michigan Dept. of Corrections,* 165 F.3d 405, 410 (6th Cir.1999); *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1095 (6th Cir.1996).

L.Ed.2d 59 (1984); *Mertik v. Blalock,* 983 F.2d 1353, 1356 (6th Cir.1993). Moreover, although a District Court is required to accept the truth of the plaintiff's factual allegations, it is not required to accept as true either legal conclusions or unwarranted factual inferences. *Gregory v. Shelby County, Tennessee,* 220 F.3d 433 (6th Cir.2000).

The Plaintiffs' Third Amended Complaint contains lengthy general allegations relating to the alleged shortcomings of Defendant with respect to the manner in which employees are promoted. *See* Doc. # 177 at ¶¶ 12–24. In addition, that pleading sets forth allegations relating to the efforts of the named Plaintiffs to be promoted. *Id.* at ¶¶ 29–40 (Elna Hoffman); ¶¶ 45–57 (Patricia Dunn); ¶¶ 60–64 (Kimberly Maxwell).[8] The Court will initially discuss the general allegations, following which it will turn to the specific allegations relating to each of the named Plaintiffs.

The Plaintiffs contend that, from 1991 through May 30, 1997, Defendant failed to maintain job descriptions or substantive qualifications for jobs for its production associates; rather, Defendant acted under the premise that Production Associates were capable of performing all production jobs. Doc. # 177 at ¶ 12. According to the Plaintiffs, the primary method for obtaining promotions is through the "Buddy System," under which an employee's experience and qualifications are less important than his or her relationship with senior managers (i.e., employees who have curried favor with senior managers through social activities, sports activities and in other ways are given favored treatment). *Id.* at ¶ 13. With respect to promotions to exempt or management positions, the Defendant has consistently failed to maintain application procedures, and promotions to those positions were made through the "Buddy System." *Id.* at ¶ 14.

There are two second-tier, non-management positions to which Production Associates can be promoted, to wit: Team Leader and Production Staff. *Id.* at ¶ 16. Those two positions are on an equal level, and Production Associates are eligible for promotion to either position. *Id.* According to the Plaintiffs, a 1988 Conciliation Agreement between the Defendant and the Equal Employment Opportunity Commission ("EEOC") mandated a promotion procedure whereby a Production Associate could indicate an interest in being promoted to Team Leader and/or Production Staff by marking a box in her annual evaluation form. *Id.* Such an indication of interest in being promoted is effective for one year (i.e., for the duration of the evaluation form). *Id.* The procedure of indicating an interest in being promoted to Team Leader or Production Staff, by a Production Associate marking a box on her evaluation form, did not permit the employee to apply for a specific position, rather only for any Team Leader or Production Staff positions which might become open during the following year. *Id.*

The Plaintiffs allege that, in addition to mandating that the Defendant permit Production Associates to indicate a desire to be promoted on their annual evaluation forms, the 1988 Conciliation Agreement required Defendant to post vacancies for positions of Team Leader and Production Staff in the department in which a vacancy occurred. Doc. # 177 at ¶ 23. Despite that obligation, Defendant did not require its managers to post vacancies, and, as a consequence, the posting of vacancies varied from department to department and from time to time. *Id.* When a posting was made, it would appear only in the department in which the vacancy was located and would fail to include a job description. *Id.* A typical posting would list only generic job titles, without identifying the specific position or its duties.[9] *Id.* Since

---

8. Since named Plaintiff Paula Knight has never been employed by the Defendant, the Plaintiffs' Third Amended Class Action Complaint contains allegations concerning her efforts to obtain employment with the Defendant, rather than to be promoted.

9. Plaintiffs allege that the following in an example of a typical posting: " 'the Assembly Department has openings for 2 position(s) of either

Staff or Team Leader. To be considered for this position, associates must have indicated on their yearly self-evaluation form their desire to seek promotion and must meet the following criteria.' " Doc. # 177 at ¶ 23. According to the Plaintiffs, criteria regarding attendance and months in the department would be listed. *Id.* A Production Associate seeing such a positing would not know whether an available position

Production Associates were seldom permitted to go outside the department in which they worked, it was difficult to learn of opportunities in other departments, even when they were posted. *Id.*

Plaintiffs also allege that an employee could apply for a promotion to another department by way of a transfer or by so indicating on a Career Interest Form. Doc. # 177 at ¶ 24. However, an employee would not be aware of any specific job which was open in the department to which she desired to transfer, except by word of mouth. *Id.*

The Plaintiffs allege that Defendant subjected named Plaintiff Elna Hoffman ("Hoffman") to its pattern and practice of discriminating against females, because of their gender, by failing to afford promotion opportunities to women on an equal basis as those provided to men. Doc. # 177 at ¶ 26. According to Plaintiffs, Hoffman indicated on evaluation forms for 1990, 1992, 1993 and 1994 that she was interested in a promotion to the position of Production Staff. *Id.* at ¶¶ 29–32. Despite the fact that in each of those years a number of promotions were made, Hoffman was not promoted. *Id.* According to Plaintiffs, Hoffman understood that, by indicating an interest in a promotion on an annual evaluation form, Defendant's policy was to consider her eligible and part of the pool for promotions. *Id.* at ¶¶ 30, 32. Hoffman also indicates that she never saw postings for specific job openings which were available to Production Associates, although there may have been an occasional posting for a generic job opening, such as one or more Team Leader positions. *Id.* at ¶ 38. However, those generic announcements did not advise Production Associates of what specific Team Leader or Production Staff positions were open, nor did they inform Production Associates of the job descriptions of the open positions. *Id.* Plaintiffs also allege that, in addition to expressing her interest in a promotion on her annual evaluation forms, Hoffman completed Career Interest Forms, in an effort to obtain a promotion. *Id.* at ¶¶ 33–36.

As with Hoffman, Plaintiffs allege Defendant subjected named Plaintiff Patricia Dunn ("Dunn") to its pattern and practice of discriminating against females, because of their gender, by failing to afford promotion opportunities to women on an equal basis as those provided to men. Doc. # 177 at ¶ 43. Dunn completed the portion of her 1989 and 1990 evaluation forms, indicating that she was interested in being promoted to the position of Production Staff. *Id.* at ¶¶ 45–46. In the fall of 1991, Dunn completed a supplemental promotion request form and was promoted to the position of Production Staff. *Id.* at ¶ 46. However, she gave up her promotion, because it required her to work rotating shifts, an arrangement which was not possible as a result of her pregnancy. *Id.* Thereafter, Dunn attempted to secure a promotion to the position of Team Leader or Production Staff, by indicating an interest in such a promotion on her annual evaluation forms for 1991, 1992, 1994, 1995, 1996, 1997 and 1998.[10] *Id.* at ¶¶ 47–48, 50–51, 53, 55–56. In accordance with Defendant's policies, Dunn was not permitted to identify a specific Team Leader or Production Staff position to which she wanted to be promoted. *Id.* Although qualified for a promotion, Dunn was not promoted. *Id.* In addition to indicating her desire for a promotion on her annual evaluation forms, Dunn filled out a supplemental interest in promotion form on August 26, 1997, again indicating an interest in being promoted. *Id.* at ¶ 54. Defendant did not respond to that request for a promotion. *Id.* Dunn also expressed a desire to be promoted into the Purchasing Department and the Associate Development Center, by filling out three Career Interest Forms. *Id.* at ¶ 52. In accordance with Defendant's policies, Dunn was not informed which specific positions in those departments were available. *Id.* Despite being qualified for positions in those departments, Defendant did not respond to Dunn's requests. *Id.* Plaintiffs' Third Amended Complaint does not contain allegations as to whether Dunn ever saw postings for posi-

was for Team Leader or Production Staff and what were the duties of that position. *Id.*

10. Dunn did not indicate that she was interested in a promotion on her annual evaluation form for 1993. Doc. # 177 at ¶ 49.

tions of Team Leader and/or Production Staff.

Kimberly Maxwell ("Maxwell") is the other named Plaintiff alleging to have been discriminated against on the basis of her gender by being denied promotions. Plaintiffs allege that Maxwell indicated on her 1991 and 1992 annual evaluation forms that she was interested in a promotion to the position of Team Leader or Production Staff. Doc. # 177 at ¶¶ 60–61. In accordance with Defendant's policies, Maxwell was not permitted to apply for a specific Team Leader or Production Staff position. *Id.* Despite being qualified for a promotion, Maxwell was not promoted. *Id.* As a result of having been passed over for promotions, Maxwell ceased indicating on her annual evaluation forms that she was interested in a promotion. *Id.* at ¶ 62.

■ The Plaintiffs' Third Amended Complaint addresses three types of promotions, to wit: promotions to exempt or management positions; promotions from the position of Production Associate to Team Leader or Production Staff; and promotions by way of a Career Interest Form. With respect to the first type, the Plaintiffs unquestionably allege that Defendant did not have a procedure by which Production Associates or any other employee could indicate an interest for a promotion to an exempt or management position and that vacancies for such positions were not posted. *See e.g.,* Doc. # 177 at ¶¶ 14 and 16. With respect to promotions by way of Career Interest Forms, the Defendant does not assert that the positions were posted and, therefore, does not seek dismissal of such claims. *See* Doc. # 179 at 4 n. 2. Therefore, the primary question for this Court to decide is whether the Plaintiffs have adequately plead failure-to-promote claims arising out of the fact that they have not been promoted to the positions of Team Leader and/or Production Staff. As is indicated above, this Court previously indicated that the Plaintiffs could meet that obligation by alleging either: 1) that one or more or all

of them applied for specific promotions, only to be denied because of her or their sex; or 2) that the Defendant failed to post promotions and either they had no knowledge of the positions, or they made an effort to apply for those promotions through an informal procedure endorsed by the Defendant.

It bears emphasis that nowhere in their Third Amended Complaint have the Plaintiffs alleged that one or more or all of their number actually applied for a specific promotion, only to be denied because of her gender. Therefore, the Plaintiffs have not complied with the one of the alternative methods of curing the deficiency in their Second Amended Complaint which this Court identified in its Decision of September 23, 1999. Consequently, the question becomes whether they have alleged that the Defendant failed to post promotions and either they had no knowledge of the positions, or they made an effort to apply for those promotions through an informal procedure endorsed by the Defendant. This Court based this exception to the requirement that an employee formally apply for a specific promotion on language by the Second Circuit in *Brown* that a plaintiff would be excused from applying for a promotion under such circumstances.[11] In *Mauro v. Southern New England Telecommunications, Inc.,* 208 F.3d 384 (2nd Cir.2000), the Second Circuit applied the theoretical exception it had recognized in *Brown,* and concluded that the plaintiff had established a *prima facie* case of failure-to-promote discrimination, despite his failure to apply for promotions. Therein, the plaintiff was demoted from a Level 2 position to a Level 1 position as a result of a corporate restructuring. Thereafter, the plaintiff expressed an interest in being promoted again to a Level 2 position, although he did not apply for a particular position. After a number of co-workers had been promoted to Level 2 positions, the plaintiff brought suit, alleging that he had been denied a promotion because of his age. The District Court entered summary judgment for the defendant, concluding that the plaintiff could not estab-

---

**11.** Therein, this Court also noted that the statement of the Second Circuit in that regard was fully consistent with decisions by other Circuits. *See Chambers v. Wynne School Dist.,* 909 F.2d 1214, 1217 (8th Cir.1990); *Equal Employment Opportunity Comm'n v. Metal Service Co.,* 892 F.2d 341, 348 (3rd Cir.1990).

lish a *prima facie* case of discrimination, because he had not applied for any promotions. Upon the plaintiff's appeal, the Second Circuit disagreed, noting that, construing the evidence in the manner most favorable to the plaintiff, he had expressed an interest in being promoted and the defendant had hand-picked the individuals who were promoted to Level 2 positions, without posting vacancies.[12] *See also, Grant v. Harcourt Brace College Publishers*, 1999 WL 717982 (6th Cir.1999) (in a refusal to rehire case noting that depending on the facts and circumstances "an employee need not formally apply for a position" in order to establish a *prima facie* case of discrimination).

█ Herein, named Plaintiffs Hoffman and Dunn have alleged that they took advantage of what they allege to be Defendant's procedures for seeking promotions to positions of Team Leader and Production Staff, by indicating a desire for such a promotion on their annual evaluations.[13] Thus, the question becomes whether the Plaintiffs have alleged that the Defendant failed to post openings for those positions.[14] As is indicated, the Plaintiffs have alleged in the Third Amended Complaint that Defendant did not require its managers to post vacancies, and, as a consequence, the posting of vacancies varied from department to department and from time to time. When a posting was made, it would appear only in the department in which the vacancy was located and would fail to include a job description. A typical posting would list only generic job titles, without identifying the specific position or its duties. Since Production Associates were seldom permitted to go outside the department in which they worked, it was difficult to learn of opportunities in other departments, even when they were posted. Moreover, the Plaintiffs have alleged that the primary method of securing a promotion was through the buddy system. As the Second Circuit noted in *Mauro*, the failure to request a particular promotion does not prevent a plaintiff from establishing a *prima facie* case of discrimination, when he indicates an interest in being promoted and the defendant hand picks those who will be promoted. Given the foregoing allegations, as well as the reasonable inferences that can be drawn from them, this Court concludes that the named Plaintiffs Hoffman and Dunn can prove a set of facts that would entitle them to relief on their claim of discrimination in promotions.

Accordingly, the Court overrules the Defendant's Motion to Dismiss (Doc. # 179), to the extent that, with that motion, Defendant seeks dismissal of the failure-to-promote claims of Hoffman and Dunn.

12. The Second Circuit did, however, conclude that the District Court had properly granted summary judgment to the defendant, since the evidence did not raise a genuine issue of material fact concerning the issue of pretext.

13. Maxwell, however, has not alleged that she took advantage of the informal procedures for seeking a promotion. Therefore, the Court sustains the Defendant's Motion to Dismiss (Doc. # 179), to the extent that, with that motion, Defendant seeks dismissal of Maxwell's failure-to-promote claim.

14. As supplemental authority, the Plaintiffs have cited the decision of Judge George Smith in *Napier v. Honda of America*, Case No. C–2–99–476 (S.D.Ohio). *See* Doc. # 214. Therein, the defendant, relying upon *Brown*, moved to dismiss the plaintiffs' failure-to-promote claims, because they failed to allege that they had applied for particular promotions. Judge Smith overruled that motion, concluding that a plaintiff can plead a *prima facie* case of failure-to-promote discrimination by alleging that he has expressed an interest in promotions and the employer, as a matter of practice, promotes individuals into positions without posting openings. It should be noted that this Court reached exactly the same conclusion in its Decision of September 23, 1999. Indeed, Judge Smith concluded that his decision was fully consistent with this Court's, since both decisions recognize that a plaintiff's failure to allege that she formally applied for a specific promotion does not necessarily mean that she has failed to set forth a *prima facie* case of failure-to-promote discrimination, the only difference being that allegations of the plaintiffs in *Napier* were sufficient, while the allegations of the Plaintiffs, herein, in their Second Amended Complaint, were not.