PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LINDA A. WILLIAMS,
                    *Plaintiff-Appellant,*

v.

GIANT FOOD INCORPORATED; ROYAL
AHOLD; JIM FRAZETTI, in his official
capacity as Vice President of Store
Operations; COLLEEN MCDANIEL, in
her official capacity as District
Manager,

                    *Defendants-Appellees.*

No. 03-1628

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-01-1314-PJM)

Argued: February 26, 2004

Decided: June 4, 2004

Before WIDENER, SHEDD, and DUNCAN, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opinion. Judge Shedd wrote the majority opinion, in which Judge Duncan joined. Judge Widener wrote a concurring opinion.

_____

## COUNSEL

**ARGUED:** Jo Ann P. Myles, Largo, Maryland, for Appellant. Connie Nora Bertram, VENABLE, L.L.P., Washington, D.C., for Appellees.

**OPINION**

SHEDD, Circuit Judge:

Linda Williams sued her former employer, Giant Food Inc., for race, sex, and age discrimination; retaliation; and constructive discharge. The district court dismissed her initial complaint but granted her leave to file an amended complaint alleging failure-to-promote claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. After permitting Williams limited discovery, the district court granted summary judgment to Giant Food on Williams's failure-to-promote claims. Because we conclude that Williams created a genuine issue of material fact relevant to her failure-to-promote claims under § 1981, we reverse the district court's summary judgment and remand this case for further proceedings. In all other respects, we affirm the rulings of the district court.

I.

Giant Food operates nearly 200 grocery stores in several states and the District of Columbia. Williams is an African-American woman who worked for Giant Food from March 1980 to April 2000. From April 1995 to November 1998, Williams was an assistant manager at Store 103; from November 1998 to February 2000, she was assistant manager at Store 75. Williams resigned from Giant Food in April 2000. As an assistant manager, Williams reported to the general manager of her store. General managers, in turn, reported to district managers.

For years Giant Food filled management vacancies based on recommendations from supervisors and human resources personnel. In March 1997, Giant Food replaced this relatively informal system with a self-nomination program for promotions to general manager and district manager positions. Under this program, assistant managers who were interested in being promoted to general manager were required to apply for that position by completing and submitting a self-nomination form. Giant Food notified its employees of this new procedure through several memoranda and "Giant FYI," the company's employee newsletter.

Giant Food first notified employees about the self-nomination program in March 1997, in conjunction with an announcement that the company would be conducting a selection process for general manager positions. Giant Food required every assistant manager to complete and return a form confirming receipt of the memorandum describing the self-nomination procedure and indicating interest in the general manager positions. When Williams did not return the form by the specified date, recruitment manager David White contacted her by phone. White described the self-nomination procedure and asked Williams whether she planned to apply for the promotion to general manager. For various reasons, Williams was not interested.

Giant Food sent another letter to assistant managers in October 1997, this time in conjunction with an announcement concerning a selection process for general manager positions in New Jersey and Delaware. Williams testified that she received this letter but was not interested in the promotion.

Giant Food again advertised its self-nomination program in the February 1998 issue of "Giant FYI." Although Williams admitted that she received "Giant FYI" and usually read articles of interest to her, she testified that she did not read the February 1998 issue. Two months later, Giant Food distributed another memorandum describing the general manager selection process. Williams admitted receiving this memorandum, but she made no response to it.

In April 1998, Giant Food sent another memorandum to assistant managers and others describing the self-nomination procedure. Williams received this memorandum. Although the memorandum instructed employees to contact their district managers with any questions, Williams made no response to the memorandum.

Later that month, on April 20, 1998, Giant Food distributed to its retail stores a posting for available general manager positions. More than 100 employees responded to this posting, and each was instructed to complete a self-nomination form. Giant Food conducted panel interviews for applicants who passed an initial screening and ultimately promoted twenty-eight employees to general manager positions. Giant Food did not consider any employee for this promotion who did not respond to the April 20 job posting.

Williams did not respond, and she was not considered for this promotion. Williams contends, however, that the April 20 posting was not displayed at her store. She testified that it was her practice each day to (1) review the Consolidated Bulletin (a mailing sent by management to the store containing job postings and other notices), (2) review the postings that were displayed on the break room bulletin board, and (3) remove from the bulletin board postings that had expired. On certain days, Williams herself was responsible for removing job postings from the Consolidated Bulletin and putting them on the bulletin board. Yet Williams never saw the April 20 advertisement for promotions to general manager. Williams testified that she would not have applied for this promotion even had she seen the posting because her performance ratings — which she contends were "unfair and untrue and incorrect" — made her ineligible for the position of general manager.

Giant Food distributed a posting for promotions to district manager on November 12, 1998. Giant Food conducted an initial screening of the thirty or so employees who responded to this posting, conducted interviews, and ultimately promoted eight employees to district manager positions. Williams did not respond to this job posting, and she was not considered for the promotion. Williams testified that she never saw this posting. Although the position of district manager is higher than the position of general manager — for which Williams thought she was unqualified — Williams testified that she would have nominated herself for this promotion had she seen a posting for it. At the very least, she would have inquired about the requirements for the district manager position.

Although Williams testified that the April 1998 and November 1998 postings were not displayed in her stores, Giant Food had a formal job posting policy that required general managers to post all job announcements in the break rooms of their stores. If a posting were to be removed from the bulletin board before the period for response had expired, it was the responsibility of the general manager to request a duplicate posting. Ray Turek, general manager of Store 75, and Michael King, general manager of Store 103, each testified that it was his practice to post, or cause to be posted, every job posting he received from the company and that he never intentionally failed

to display a job posting in order to conceal the opportunity from Williams.

Giant Food advertised another promotion selection for general manager on March 15, 2000, but it did not make its selections for this promotion until after Williams resigned from employment in mid-April. On December 7, 2000 — eight months after she left Giant Food — Williams filed a charge of discrimination with the EEOC.

After receiving a right-to-sue letter from the EEOC, Williams filed this lawsuit in the district court, alleging race, sex, and age discrimination; retaliation; and constructive discharge. This complaint alleged various instances of discrimination spanning the entire twenty years of Williams's employment. On Giant Food's motion, the district court dismissed this initial complaint and granted Williams leave to file an amended complaint alleging failure-to-promote claims specifically.[1]

Williams filed an amended complaint alleging violations of Title VII and § 1981 based upon Giant Food's failure to promote her to the position of general manager or district manager during her employment and seeking damages and injunctive relief. Giant Food moved the district court to dismiss the amended complaint or for summary judgment, arguing that (1) most of Williams's failure-to-promote claims were untimely and (2) Williams could not prevail on her timely claims because she never applied for the relevant promotions.

After a hearing on Giant Food's motion, the district court dismissed all claims based upon promotion decisions that were made prior to the applicable limitations periods. Thus, the district court pared the case down to the question whether Williams could establish a prima facie case of discrimination based upon promotion selections

---

[1]Williams's initial complaint also named Royal Ahold, Jim Frazetti, and Colleen McDaniel as defendants. The district court denied the motion to dismiss filed by Royal Ahold, which Williams alleged was liable for the conduct of Giant Food as its parent corporation. At the same time, the district court granted the motions filed by Frazetti and McDaniel. Williams did not re-assert any claims against these individual defendants in her Amended Complaint, and she does not challenge their dismissal on appeal.

made during the three-year period from May 1998 to May 2001. Because Williams alleged that Giant Food had an informal or secretive promotion process that kept her uninformed of promotion opportunities, the district court permitted Williams to conduct discovery limited to matters concerning Giant Food's job posting practices for the positions of general manager and district manager.

After the parties conducted the discovery permitted by the district court, Giant Food moved for summary judgment on the remaining failure-to-promote claims. The district court granted summary judgment to Giant Food on the ground that Williams had not applied for the two available promotions even though Giant Food had advertised those opportunities. The district court also denied Williams's motions for default judgment and sanctions. This appeal followed.

## II.

As Williams's counsel represented to the district court, this case is primarily a failure-to-promote case. After dismissing Williams's other claims (for reasons discussed below), the district court granted Williams leave to file an amended complaint alleging failure-to-promote claims specifically. The amended complaint asserted claims for violation of Title VII and § 1981. Giant Food promptly filed a motion for summary judgment, and Williams sought discovery under Fed. R. Civ. P. 56(f). After allowing discovery concerning Giant Food's job posting practices for the positions of general manager and district manager, the district court granted summary judgment to Giant Food, concluding that Williams had not applied for a specific promotion and therefore failed to establish a prima facie case of discrimination. We review the district court's grant of summary judgment *de novo*, viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to Williams. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.

The district court first ruled that Williams could not prevail on any failure-to-promote claims arising from conduct alleged to have occurred outside the applicable limitations periods. In order to main-

tain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1). This period is extended to 300 days in cases such as this, "when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)). Williams filed her EEOC charge on December 7, 2000; thus, she could not prevail on any claim under Title VII based upon misconduct alleged to have occurred before February 12, 2000. Because Giant Food made no promotion selections between February 12, 2000 and Williams's resignation in April 2000,[2] the district court properly ruled that Williams could not prevail on her Title VII claim.

Similarly, the district court ruled that Williams could not prevail on her § 1981 claim to the extent that it relied upon misconduct alleged to have occurred more than three years before the filing of her complaint. Because § 1981 does not specify a limitations period for actions brought under that section, and because this action was brought in Maryland, we "look to Maryland law to borrow the limitations period for the most analogous state action." *Grattan v. Burnett*, 710 F.2d 160, 162-63 (4th Cir. 1983) *aff'd*, 468 U.S. 42 (1984). We have held that a complaint alleging a violation of § 1981 in Maryland must be brought within three years of the alleged misconduct. *Id.* Since Williams filed her complaint in May 2001, the district court properly determined that the § 1981 claim could only be based upon alleged failures to promote between May 1998 and Williams's resignation.

Williams argues that the continuing violation doctrine extends the ordinary limitations periods. This argument is foreclosed by *National Passenger Railroad Corporation v. Morgan*, 536 U.S. 101 (2002),

---

[2]Although some promoted employees received their store assignments during the 300-day period, it is the date of the actual promotion decision and not the date of ultimate assignment (or any other date) that determines the timeliness of Williams's claims. *See Scoggins v. Douglas*, 760 F.2d 535, 537 (4th Cir. 1985) (*per curiam*) (affirming the district court's conclusion that the plaintiff's failure-to-promote claim accrued when he learned of the selection decision).

which holds that an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred. Such discrete acts of discrimination "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Because failure to promote is a discrete act of discrimination, *id.* at 114, the continuing violation doctrine does not apply here and cannot save Williams's untimely claims. *See also Davidson v. America Online*, 337 F.3d 1179, 1185-86 (10th Cir. 2003) (holding that the plaintiff could only pursue refusals to hire that occurred within the limitations period); *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 987-88 (8th Cir. 2003) (holding that the plaintiff's tenure and promotion claims were barred because they were not filed within 300 days of the alleged misconduct).

Nor does Williams's allegation of a 20-year "pattern or practice" of discrimination extend the applicable limitations periods. Although the Court in *Morgan* left open the question whether the continuing violation doctrine applies to "pattern or practice" claims, 536 U.S. at 115 n.9, other courts have declined to extend the limitations periods for discrete acts of discrimination merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination, *see Davidson*, 337 F.3d at 1185-86; *Cherosky v. Henderson*, 330 F.3d 1243, 1246-48 (9th Cir. 2003). This result is consistent with the analysis in *Bazemore v. Friday*, 478 U.S. 385 (1986), in which the Court considered a pattern-or-practice challenge to an allegedly discriminatory salary policy. Although the discriminatory practice had begun well before the plaintiff filed a charge, the Court concluded that each discriminatory salary payment was a discrete discriminatory act even though such payment was made pursuant to a broader policy. *Id.* at 395. In the same way, even if Williams is correct that Giant Food's failures to promote her during the applicable limitations period were part of a broader pattern or practice of discrimination, those failures to promote remain discrete acts of discrimination. *See Davidson*, 337 F.3d at 1186; *Cherosky*, 330 F.3d at 1247.

Williams cannot pursue a cause of action based solely on a pattern or practice of discrimination, *see Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 759-61 (4th Cir. 1998), *vacated on other grounds*, 527

U.S. 1031 (1999), so she alleges several different failures to promote.[3] We see no reason why the general rule set out in *Morgan* should not apply to such separate incidents just because Williams alleges, in a general sense, that there was a "pattern or practice" of discrimination. Because Williams cannot extend the limitations periods applicable to her claims, we conclude that the district court properly granted summary judgment to Giant Food on all claims — under Title VII or § 1981 — arising from conduct that occurred beyond those limitations periods.[4]

## B.

After allowing limited discovery, the district court granted summary judgment on Williams's remaining § 1981 claims. In order to establish her prima facie case, Williams was required to show that (1) she is a member of a protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) Giant Food rejected her application under circumstances that give rise

---

[3]Contrary to Giant Food's contention, *Lowery* does not itself establish that the continuing violation theory cannot apply in this case. *Lowery* merely held that an individual plaintiff (as opposed to a class action plaintiff) cannot pursue a cause of action based on a pattern or practice of discrimination or invoke the proof scheme described in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). *Lowery*, 158 F.3d at 759-61. Nevertheless, an individual plaintiff may "use evidence of a pattern or practice of discrimination to help prove claims of individual discrimination within the *McDonnell Douglas* framework." *Id.* at 760-61. That is all Williams seeks to do here, and all she is permitted to do. The question here is whether Williams's background allegations of systemic discrimination change the nature of the discrete claims she asserts such that the *Morgan* rule should not apply. We answer that question in the negative.

[4]Williams also asserts that she is entitled to equitable tolling of the limitations periods. As an initial matter, Williams makes no argument in her brief to support this assertion, and we deem it abandoned on appeal. *See* Fed. R. App. P. 28(a)(9). In any event, we conclude that tolling is not appropriate here, because Williams did not allege that Giant Food deceived or misled her about its promotion selections "in order to conceal the existence of a cause of action." *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 280 (4th Cir. 2000).

to an inference of discrimination. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).[5] The district court granted summary judgment on the ground that Williams never applied for a specific position. That fact is undisputed.

Williams contends, however, that she was not required to apply for a specific position because she repeatedly expressed her desire to obtain a promotion and the company failed to make her aware of specific promotion opportunities. If an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote. *See Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003); *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145-46 (6th Cir. 1989); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir. 1985). In such a circumstance, the employee's general requests for advancement are insufficient to support a claim for failure to promote. *See Smith*, 352 F.3d at 1345 (stating that "[a] general interest in being rehired without submitting an application is not enough to establish a prima facie case of age discrimination when the defendant-employer has publicized an open position"); *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998).

On the other hand, if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position. *See, e.g., Mauro v. Southern New England Telecomms., Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) (*per curiam*) (stating that the application requirement did not apply where "the plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them"); *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 349 (3d Cir. 1990) (stating that "relaxation of the application element of the prima facie case is especially appropriate when the hiring

---

[5]The same elements are required for failure-to-promote claims alleged under Title VII and § 1981, and the district court properly considered these claims together. *Bryant*, 333 F.3d at 545 n.3; *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002).

process itself, rather than just the decision making behind the process, is implicated in the discrimination claim or is otherwise suspect"); *Box*, 772 F.2d at 1376 (stating that "[w]hen an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat"). As the Second Circuit observed in *Mauro*, "requiring the plaintiff to show that he or she applied for the specific jobs at issue would be unrealistic" where the employer did not post the vacancy, "as an employee by definition cannot apply for a job that he or she does not know exists." 208 F.3d at 387.

Giant Food produced evidence showing that it adopted a self-nomination procedure for promotions and made that procedure known to employees. Williams admitted that she received and read some of the materials in which the company described the self-nomination procedure. Williams also admitted that Giant Food's recruitment manager had a telephone conversation with her in which he described the procedure. This aspect of Giant Food's promotions policy was neither informal nor secretive.

Of course, operation of the company's self-nomination procedure depended upon employees' being made aware of promotion opportunities: Only an employee who knew about an upcoming promotion selection could avail herself of the self-nomination procedure. *See Mauro*, 208 F.3d at 387. Thus, even if Giant Food's promotion selection policy was open and apparent to its employees, Williams might still establish a prima facie case if she can show that she was unaware of promotion opportunities because the company did not follow its own policy in her stores. *Cf. Barnett v. W.T. Grant Co.*, 518 F.2d 543, 549 (4th Cir. 1975) (disapproving informal, word-of-mouth hiring practices); *Metal Serv. Co.*, 892 F.2d at 349-51 (noting that an employer's word-of-mouth hiring practices made it difficult to ascertain which positions were available); *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793, 797-99 (11th Cir. 1988) (concluding that the plaintiff established a prima facie case of discriminatory failure to promote where his employer never posted notice of the vacancy and used informal communications in social gatherings to make promotion selections).

Williams contends that Giant Food did not post the April 1998 and November 1998 promotion opportunities at her stores.[6] Williams testified that (1) she reviewed the Consolidated Bulletin — a compendium of memoranda and other notices, including job postings, circulated to individual stores — every day and read memoranda relevant to her responsibilities; (2) she was responsible, on Wednesdays and when the general manager was on vacation, for removing memos from the Consolidated Bulletin and posting them on the break room bulletin board; (3) she reviewed the substance of the memos that she posted on the bulletin board; (4) she looked at the postings on the bulletin board every day; and (5) it was her responsibility as an assistant manager to remove expired postings every day. Even as she performed these duties, however, Williams never saw the April 1998 posting or the November 1998 posting.

In response to this testimony, Giant Food produced evidence showing that it issued a job posting for the general manager position on April 20, 1998 and that it distributed this posting to its retail stores. More than 100 employees from approximately 100 different job locations responded to this posting. Giant Food issued a similar posting for the district manager position on November 12, 1998 and distributed this posting to its retail stores. Approximately thirty employees responded to this posting. The general managers of Stores 103 and 75 — Williams's stores — testified that it was their practice to post, or cause to be posted, every job posting they received from management and that they never intentionally failed to post a job posting in an effort to conceal a promotion opportunity from Williams.

Williams's testimony is sufficient to create a genuine issue of material fact concerning Giant Food's posting of the April 1998 and November 1998 promotion opportunities in her stores. Although the district court correctly concluded that summary judgment could not be defeated merely by general testimony that Williams never saw the

---

[6]Williams also claims that Giant Food should be held liable for its failure to promote her in connection with the March 2000 promotion. Williams cannot establish a prima facie case with respect to this claim, however, because she cannot show that she was qualified for the position of general manager at the time of the selection, having already resigned from the company.

postings, Williams testified to more than that. In light of her further testimony that she checked the bulletin board daily and on certain days attached postings to, and removed them from, the bulletin board,[7] it could reasonably be inferred that the relevant postings were not published in her stores at all. Giant Food produced evidence only of a general practice of displaying job postings in particular stores; at the summary judgment stage, such evidence could not eliminate the inference from Williams's testimony that the job postings were not displayed in her stores.

Even if Giant Food did not advertise the April 1998 and November 1998 promotion opportunities in Williams's stores, Williams cannot be treated as if she had applied for those promotions unless she can show that she would have applied had she known about them. *See Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 523 (7th Cir. 1994); *Wanger*, 872 F.2d at 146; *Box*, 772 F.2d at 1377. Williams testified that she would not have applied for the April 1998 promotion selection because she did not meet the requirements for the position of general manager. Specifically, the posting stated that above-average performance evaluations were required and Williams did not have such evaluations in April 1998. Williams also testified that she believed her evaluations were "unfair and untrue and incorrect."

Williams's testimony at least implies that she would not have applied for the April 1998 promotion because she thought applying would be futile. "[T]he failure to apply for a job does not preclude recovery if a claimant can demonstrate that he would have applied but for an accurate knowledge of the employer's discrimination and that he would have been discriminatorily rejected had he actually applied." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998); *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990). *Cf. Teamsters*, 431 U.S. at 365-66.

It is undisputed that decisions concerning promotions were made, in part, based upon performance evaluations. The posting for the

---

[7]Although it is not necessary to create the factual dispute, it should be noted that Williams also testified that she often checked the bulletin board pursuant to her specific job responsibilities as an assistant manager.

April 1998 promotion to general manager expressly stated that it was a requirement for the position of general manager that the applicant have above-average performance ratings. Thus, Williams accurately recognized that she was ineligible for the position of general manager. If Williams could show that the grounds for her ineligibility — her "unfair and untrue and inaccurate" evaluations — was a product of her supervisors' racial discrimination, then she could demonstrate that she would have applied for the April 1998 promotion but for her employer's discriminatory conduct. If she could make this showing, then she should be treated as if she had, in fact, applied.

Williams's testimony that she believed her evaluations to be "unfair and untrue and incorrect" is merely a self-serving opinion that cannot, absent objective corroboration, defeat summary judgment. *See National Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Under the district court's order limiting discovery, however, Williams was not permitted to adduce such corroborative evidence (if it indeed exists). Summary judgment was therefore inappropriate since "the nonmoving party ha[d] not had the opportunity to discover information that is essential to [her] opposition." *Anderson*, 477 U.S. at 250 n.5. On remand, Williams should be permitted to conduct discovery on the question whether her performance ratings in effect in April 1998 were products of racial discrimination, such that applying for the April 1998 promotion would have been futile.[8]

While Williams stated that she would not have applied for the April 1998 promotion, she made no such representation with respect to the November 1998 promotion. To the contrary, Williams testified that she would have applied for that promotion since the November 1998 posting appeared not to require above-average performance ratings. On its face, this testimony establishes that Williams would have applied for the promotion had she seen the November 1998 posting. When asked whether she believed an assistant manager would have

---

[8]At this point, the record contains no evidence suggesting that Williams's evaluations were tainted by racial discrimination. Once discovery is completed on this issue, the district court will be in a better position to determine whether it would have been futile for Williams to apply for the relevant promotions.

been qualified for the position of district manager, Williams responded that she did not know but would have inquired as to the requirements. This testimony suggests merely that Williams was not aware of any reason why she would be ineligible for the position of district manager. On remand, Williams should be permitted to discover what the requirements were for the position of district manager. If above-average performance ratings were required, then she should be allowed an opportunity to show that it would have been futile to apply for the November 1998 promotion as well as the April 1998 promotion.[9]

### III.

Despite her counsel's earlier insistence that this case is a failure-to-promote case and not a harassment case, Williams also challenges the district court's dismissal of her initial complaint, which alleged claims other than failure-to-promote claims. According to Williams, she should have been permitted to pursue her claims for race, sex, and age discrimination; retaliation; and constructive discharge based on conduct alleged to have occurred throughout her 20-year employment. We review *de novo* the district court's dismissal of claims under Fed. R. Civ. P. 12(b)(6), taking as true the facts alleged in the complaint. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003).

The district court dismissed Williams's Title VII and ADEA claims on the ground that the conduct complained of occurred outside the applicable 300-day limitations period. The only adverse action that occurred within the 300-day period was Williams's leaving Giant Food, which she alleged was the result of a constructive discharge. To support this claim, Williams alleged that her supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back. We agree with the district court that these allegations, even if true, do not establish the objectively intolerable working conditions necessary to prove a constructive discharge. *See Matvia v.*

---

[9]Of course, summary judgment may still be appropriate if the undisputed evidence shows that Williams was not qualified for the position of district manager for reasons other than her evaluations.

*Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001); *Von Gunten v. Maryland Dep't of the Env't*, 243 F.3d 858, 867 (4th Cir. 2001); *Munday v. Waste Mgmt., Inc.*, 126 F.3d 239, 241-42, 244 (4th Cir. 1997); *Carter*, 33 F.3d at 459-60. In short, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter*, 33 F.3d at 459. Thus, the district court properly dismissed all of Williams's initial Title VII claims.

For the same reasons, the district court properly dismissed Williams's initial § 1981 claim. *See Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (noting that the elements of a prima facie case are the same under Title VII and § 1981). Williams relied upon the very same allegations to support both her constructive discharge claim and her § 1981 claim. Those allegations are simply insufficient to establish an adverse employment action. Although Williams's initial complaint alleged claims for violation of the Fair Labor Standards Act as well as 42 U.S.C. §§ 1985 and 1986, Williams never supported these claims in the district court, and she makes no specific argument for their revival on appeal. Accordingly, we affirm the district court's dismissal of these claims as well.[10]

---

[10]Even if the district court erred in dismissing Williams's initial claims, any such error might be attributed to Williams's apparent abandonment of those claims. Throughout her argument on the motion to dismiss, Williams's counsel represented to the court that whatever else was alleged in the complaint, this was a failure-to-promote case. Williams's other allegations were "only minor" and her "true complaint [was] about not being promoted." In an attempt to preserve all those "minor" allegations, counsel at the last minute stated that those allegations were not "insignificant or anything to that extent." Even then, counsel repeated that "what's paramount in this case is her claim concerning her promotion," which she invited the court to "focus on primarily." Not surprisingly, the district court concluded that "[w]hat has happened on the basis of this argument today is that this case does appear to be now alleged to be a failure to promote case rather than a racial or gender harassment case or retaliation case." Counsel made no objection at the time to the district court's expressed understanding of the case.

IV.

Faced with a complaint alleging various acts of discrimination spanning more than twenty years, the district court quite properly pared the case down to the only claims still viable — failure to promote in violation of 42 U.S.C. § 1981, during the period from May 1998 to Williams's resignation in April 2000. We affirm the rulings of the district court in every respect but one. Because we conclude that Williams might be able to prove that Giant Food did not make her aware of promotion opportunities for which she would have applied or that discriminatory practices made any application futile, we reverse the grant of summary judgment and remand the case for further proceedings consistent with this opinion.[11]

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

WIDENER, Circuit Judge, concurring:

On the same evidence, almost wholly the deposition of the plaintiff, the district judge and the panel have come to different conclusions. Even though the district judge, as he stated, did not base his conclusion on the credibility of witnesses, had he been acting as a fact-finder to decide the case under *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985), his conclusion would have been free from error although based on deposition rather than the appearance of the plaintiff in person. But because a district judge's function in deciding the merit of a motion for summary judgment "is not himself to weigh the evidence," *Anderson v. Liberty, Inc.*, 477 U.S. 242, 249 (1986), and especially in view of the fact that the district judge did not base his conclusion on credibility, I concur in the result obtained by the majority opinion.

---

[11]We affirm the district court's denial of Williams's motion for default judgment and sanctions. Giant Food vigorously defended this action and was not in default under Fed. R. Civ. P. 55(a). Nor did Giant Food engage in any sanctionable conduct with respect to its discovery obligations.