**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 04-4745**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANDRES LAURENT,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CR-03-372)

———————

Argued: February 3, 2006                    Decided: March 10, 2006

———————

Before WILKINS, Chief Judge, and WILLIAMS and SHEDD, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Brian Jay Grossman, Richmond, Virginia, for Appellant. Brian Lee Whisler, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia; John F. Wood, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Andres Laurent appeals his convictions for conspiring to produce false identification documents, 18 U.S.C.A. § 1028(f) (West 2000), and presenting a false visa application, 18 U.S.C.A. § 1546(a) (West 2000 and Supp. 2005). For the reasons that follow, we affirm.

I.

Laurent, a citizen of Estonia, was known by the name Andres Titov until he changed his name to Andres Laurent in 2001. As Titov, Laurent had a criminal record in Estonia for appropriation of property, theft, and armed robbery. On April 20, 2001, a visa application in Laurent's name was submitted to the U.S. Embassy in Estonia bearing Laurent's picture and a signature of his name. The visa application falsely stated that Laurent had no criminal record. Laurent received a visa from the embassy and entered the United States at Newark, New Jersey.

Once in the United States, Laurent, with the help of men named Villu and Valery, started selling counterfeit immigration documents, such as green cards and student visas, to unsuspecting immigrants for exorbitant sums of money. Although the organization of the counterfeiting scheme was somewhat fluid, the evidence presented at trial showed that: (1) Villu, who lived in California, produced the documents; (2) Valery located immigrants willing to

2

buy the documents; and (3) Laurent, posing as an immigration official, fingerprinted, photographed, obtained signatures of the victims, stamped the victims' visas, and actually delivered the counterfeit documents to the victims.

Laurent was charged with two counts: (1) conspiring to produce false identification documents, 18 U.S.C.A. § 1028(f), and (2) presenting a false visa application, 18 U.S.C.A. § 1546(a). In support of the conspiracy count, the Government produced, inter alia, a woman Laurent had abducted during the course of his counterfeiting scheme, Oksana Solovatkena, and five of Laurent's victims, Taisia Ketoeva, Lyudmila Zachinyayeva, Eldar Aliyev, Andrzej Hubert, and Ela Berulava. The statement of facts recounted above is a summary of these witnesses' testimony, viewed in the light most favorable to the Government. In support of the false-presentation count, the Government produced, inter alia: (1) an Estonian police officer, Olavi Kavald, who testified as to Laurent's Estonian criminal record; (2) a copy of the false visa application, which bore Laurent's photograph and a signature of his name; (3) an apartment rental application also bearing a signature of Laurent's name; (4) and Laurent's former landlord, Wayne Hall, who testified that Laurent had signed the lease.

The Government did not offer the testimony of Kavald to authenticate the visa application. Instead, the Government proceeded under the theory that the visa application was self-

authenticating because it had in its possession a certificate from the vice consul of the United States embassy in Estonia purporting to authenticate the visa application in compliance with 18 U.S.C.A. § 3505(a) (West 2000).[1]  The parties agreed, however, that the certificate itself should not be admitted into evidence because at the time, both parties were concerned that the certificate would

---

[1]The full text of that subsection, which is entitled "Foreign records of regularly conducted activity," provides:

> **(a)(1)** In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that--
>
> > **(A)** such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
> >
> > **(B)** such record was kept in the course of a regularly conducted business activity;
> >
> > **(C)** the business activity made such a record as a regular practice; and
> >
> > **(D)** if such record is not the original, such record is a duplicate of the original;
> >
> > unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
>
> **(2)** A foreign certification under this section shall authenticate such record or duplicate.

18 U.S.C.A. § 3505(a) (West 2000).  Section 3505(a) is substantially similar to Fed. R. Evid. 902(12), which allows for self-authentication of certified foreign records of regularly conducted activity in civil cases.

4

violate the Confrontation Clause as interpreted by <u>Crawford v.</u> <u>Washington</u>, 541 U.S. 36 (2004).

When the Government sought to introduce the visa application into evidence, Laurent's counsel objected, stating that "[the visa application] is not certified, and [the Estonian police officer] is not a proper authenticating witness." (J.A at 235.) Upon hearing counsel's objections, the Assistant U.S. Attorney prosecuting the case stated that "defense counsel's objection is well taken in the sense we don't have a certification attached to the document right now, but we have a certification." (J.A. at 236.) The district court admitted the visa application into evidence, but stated that it would "back it out [of evidence]" if the Government did not present the self-authenticating certificate to the court the next day. (J.A. at 236.) It is unclear from the record, and Laurent's counsel could not recall at oral argument, whether the Government actually produced the self-authenticating certificate to the court.[2] Counsel admitted, however, that whether or not the self-authenticating certificate was produced, he did not object when the evidence, including the visa application, was delivered to the jury for its deliberations.

The jury convicted Laurent of both counts, and the district court sentenced Laurent to 41 months' imprisonment. On appeal,

---

[2]Unfortunately, the Government was represented at oral argument by counsel who did not participate in the trial and who could not, therefore, shed any light on this gap in the record.

Laurent challenges both of his convictions.[3]    We address his arguments in turn.

## II.

Laurent challenges his § 1028(f) conviction for conspiring to produce false identification documents, arguing that the evidence was insufficient to convict him.  We must uphold a jury verdict on appeal if there is substantial evidence in the record, viewed in the light most favorable to the Government, to support it.  See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc).  "[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate . . . to support a conclusion of a defendant's guilt beyond a reasonable doubt."  Burgos, 94 F.3d at 862.  "[T]he appellate function is not to determine whether the reviewing court is convinced of guilt beyond reasonable doubt, but, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government, whether the evidence adduced at trial

_____

[3]In his brief, Laurent argued that this sentence violated the Sixth Amendment because it was based, in part, on facts found by the district court and not by a jury.  At oral argument, however, Laurent expressly withdrew this argument.  We therefore do not consider whether Laurent's sentence was in error.

could support any rational determination of guilty beyond a reasonable doubt." Id. at 863 (internal quotation marks omitted).

To prove Laurent participated in a conspiracy, "the government must establish an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy." United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004) (setting forth the elements of a conspiracy under 18 U.S.C. § 371). The conduct of the alleged conspirators can give rise to an inference that an agreement exists. See United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984). Laurent contends that the evidence is insufficient because it shows only "a series of buy-sell transactions between [him], his supplier, and his customers," (Appellant's Br. at 8), not the "agreement" required for a conspiracy. We disagree. Although "there may be instances where one is merely a buyer or seller, but not a conspirator," United States v. Mills, 995 F.2d 480, 485 (4th Cir. 1993), the evidence here demonstrates more than a mere buyer-seller arrangement. Several examples illustrate this point. Ketoeva, one of Laurent's victims, testified that Laurent and Valery said, "[T]hey provide people with documents." (J.A. at 90 (emphasis added).) Ketoeva arranged for others to receive green cards through Laurent and Valery. Aliyev, another one of Laurent's victims, testified that Valery told him that he should give him (Valery) money for the green card because he (Valery) "will send

7

the money to [Laurent]." (J.A. at 135.) Laurent once sent Valery to retrieve a defective passport. Solovatkena, the woman Laurent abducted, testified that "the general line up [was that] Valery . . . procur[ed] clients while Villu . . . sen[t Laurent] documents." (J.A. at 48.) She also testified that she and Laurent went to California to see Villu because there were mistakes on some of the green cards that "they," i.e., Laurent and Villu, had made for their victims. (J.A. at 63-64.) Viewed in the light most favorable to the Government, the evidence was clearly sufficient to establish that Laurent entered into a criminal agreement.

III.

Laurent also challenges his § 1546(a) conviction for presenting a false visa application. In support of this challenge, he makes several arguments, which we address in turn.

First, Laurent argues that venue was not proper in the Eastern District of Virginia because the visa application was submitted to the United States embassy in Estonia. This argument is without merit. The relevant venue statute, 18 U.S.C.A. § 3238 (West 2000), provides that "[t]he trial of all offenses begun or committed . . . out of the jurisdiction of any particular State or district shall be in the district in which the offender . . . is arrested." Here, the offense was committed in Estonia and Laurent was arrested in

8

Richmond, which is located in Virginia's Eastern District. Venue was therefore properly laid in that district under § 3238.

Second, Laurent argues that because the indictment incorrectly charges that the visa application was presented "in the Eastern District of Virginia," (J.A. at 14), not Estonia, where it was actually presented, the Government did not prove the allegations in the indictment. This argument is also without merit. Because the location of the embassy is not an element of a § 1546(a) offense, the variance in the indictment and the evidence presented at trial is harmless. See United States v. Redd, 161 F.3d 793, 795-96 (4th Cir. 1998) ("[A]s long as the proof at trial does not . . . constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible. . . . [A variance is harmless if it] does not affect an essential element of the offense." (internal quotation marks omitted)).

Third, Laurent argues that the district court erred in admitting the visa application into evidence because the vice consul's self-authenticating certificate violated Crawford v. Washington, 541 U.S. 36 (2004). This argument is unpersuasive. In Crawford, the Supreme Court held that the Confrontation Clause requires, among other things, that "[t]estimonal statements of witnesses absent from trial [are admissible] only where the declarant is unavailable and only where the defendant has had a

9

prior opportunity to cross examine." Id. at 59. We need not decide whether the self-authenticating certificate was "testimonial" for Crawford purposes, however, because a necessary condition of a Confrontation Clause violation is that the evidence in question actually came before the jury. See U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." (emphasis added)). Here, although the visa application was admitted into evidence, the self-authenticating certificate was not admitted (by agreement of the parties), and there is no argument that the certificate otherwise came before the jury. Because the certificate did not come before the jury, it presents no Confrontation Clause issue.

Laurent also argues that the district court erred in admitting the visa application into evidence because the self-authenticating certificate was not also admitted into evidence. Although this argument raises interesting questions about the proper operation of § 3505, we need not address the argument. Laurent's counsel agreed with the Government's request that the district court not admit into evidence the self-authenticating certificate and thereby invited any error about which he now complains. In fact, counsel informed us at oral argument that he would have objected on Crawford grounds had the certificate been admitted. In these circumstances, Laurent will not be heard to complain about any

10

error the district court may have made in failing to admit the self-authenticating certificate. See United States v. Bennafield, 287 F.3d 320, 325 (4th Cir. 2002) (applying invited-error doctrine to refuse to examine argument that jury charge was erroneous where defendant had requested the charge).[4]

Fourth, Laurent argues that the evidence was insufficient to convict him of presenting a false visa application. We review this argument under the same standard as we did Laurent's challenge to his conspiracy conviction. To prove that Laurent violated § 1546(a), the Government must prove that he knowingly presented or caused to be presented a material, false statement made under oath on any document required by the immigration laws or regulations promulgated thereunder. See 18 U.S.C.A. § 1546(a).

In support of his insufficiency argument, Laurent argues: "No witness testified whether the application was signed by . . . him.

---

[4]In addition to the arguments noted in the text, counsel also raised two new contentions at oral argument regarding the admissibility of the visa application. First, he contended that the self-authenticating certificate failed to comply with the rule governing admissibility of foreign records of regularly conducted activity because the vice-consul who signed the certificate was not qualified to make the certification. Second, he contended that the visa application should not have been admitted into evidence because the record failed to show that the Government produced the self-authenticating certificate to the district court, a gap in the record he argues reveals that the Government failed to satisfy the district court's condition to the admission of the visa application. Counsel waived these arguments by failing to make them in his appellate brief. See Williams v. Giant Food, Inc., 370 F.3d 423, 430 n.4 (4th Cir. 2004) (interpreting Fed. R. App. P. 28(a)(9)(A) to provide that arguments not raised in brief are deemed abandoned on appeal).

No U.S. embassy personnel testified regarding whether visa applications must be made in person or whether they may be handled by intermediaries. The evidence at trial established no connection between . . . the visa application [and him] whatsoever." (Appellant's Br. at 8.) In opposition, the Government argues that the jury could have compared the signatures of Laurent's name on the apartment rental application and the visa application, and if it believed the testimony of Hall, Laurent's landlord, that Laurent signed the rental agreement, that it could have inferred that Laurent also signed the visa application. In reply, Laurent argues that the Government was required to produce a handwriting expert if it wished to rely on the similarity of the signatures.

We agree with the Government. Hall testified that Laurent had signed his name on the rental application. Viewing the evidence in the light most favorable to the Government, we must assume that Laurent in fact signed the rental application. Although the Government presented no direct evidence showing that Laurent had also signed the visa application, the jury was entitled to compare Laurent's signature of his name on the rental application with the signature of his name on the visa application and infer from the similarity in the signatures that Laurent had signed both documents.[5] Moreover, contrary to Laurent's assertion, no expert

_____

[5]Laurent does not argue that the signatures on the visa application and the lease agreement were so different that no reasonable juror could conclude they were signed by the same

12

was required for the jury to make this comparison.  See <u>Goins v.</u>

<u>United States</u>, 99 F.2d 147, 151 (4th Cir. 1938) ("The rule is well

settled that [the jury] may be permitted to compare . . . disputed

handwriting with writing admitted or proved to be genuine.").


IV.

For the foregoing reasons, we affirm Laurent's convictions.


<u>AFFIRMED</u>

_____

person.  In fact, at oral argument, Laurent's counsel conceded that
the similarity in the signatures was "a question for the jury."