**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 12-1262**

———————————

VIVIENNE WULFF,

Plaintiff – Appellant,

v.

SENTARA HEALTHCARE, INC.,

Defendant – Appellee.

———————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:11-cv-00577-LO-IDD)

———————————

Argued: December 4, 2012        Decided: March 4, 2013

———————————

Before KING, SHEDD, and DAVIS, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED**: Leizer Z. Goldsmith, Washington, D.C., for Appellant. William McCardell Furr, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee. **ON BRIEF**: Bryan C. R. Skeen, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Vivienne Wulff appeals the district court's order granting summary judgment in favor of Sentara Healthcare, Inc.,[1] on her claims for failure to accommodate, discriminatory termination, and retaliatory termination under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101, et. seq. For the following reasons, we affirm.

I.

Wulff worked as a nurse in the emergency department at Sentara Potomac Hospital from June 2009 through April 2010. In September 2009, Wulff presented Sentara with a doctor's note stating that she was restricted from lifting more than ten pounds with her left arm. Sentara accommodated this restriction without any complaint from Wulff. Because the note only imposed the lifting restriction for six weeks, Wulff submitted another note in December 2009 that extended the same lifting restriction for another six weeks. Sentara continued the accommodation.

In March 2010, Sentara's Occupational Health Nurse, Irene Sullivan, asked Wulff to update her restrictions because the December note had only extended them for six weeks.

---

[1] Sentara notes that Wulff's actual employer was Potomac Hospital Corporation of Prince William, a corporation affiliated with Sentara. To avoid confusion, we will refer to both Wulff's employer and the Appellee as "Sentara."

Sullivan gave Wulff a Physical Capacities Form to have her doctor complete. This form listed numerous possible restrictions and instructed the doctor to place a check mark next to each restriction that applied. With regard to lifting restrictions, the form presented the following options: "No lifting/carrying 0-20 lbs.," "No lifting/carrying 20-50 lbs.," and "No lifting/carrying 50-100 lbs." The form listed numerous other potential restrictions next to which the doctor could place a check mark, and the form provided a space for additional comments.

Wulff's physician's assistant completed the form on March 24, and Wulff returned it to Sullivan one week later. The restrictions noted on this form were far more stringent than the previous restrictions. Specifically, on the March 24 form, Wulff's physician's assistant placed check marks next to the following restrictions: "No lifting/carrying 0-20 lbs.," "No pushing/pulling," "No climbing ladders, poles, etc," and "No stretching or working above shoulders." J.A. 64.[2]

---

[2] Wulff contests the accuracy of this form and contends that it overstated her restrictions. However, she submitted the form to Sentara without taking any steps to clarify or correct the alleged misstatements, justifying Sentara's decision to abide by the restrictions shown on the form. See Uhalik v. Runyon, Case No. 95-CV-75179-DT, 1997 U.S. Dist. LEXIS 6911, at *16 (E.D. Mich. Mar. 18, 1997) (where employee requested to perform work his doctor had restricted him from performing, the employer "was perfectly justified in refusing to return plaintiff to . . .
(Continued)

After receiving the form, Sullivan emailed the Emergency Room Clinical Director, Inez Johnson, informing her of the restrictions noted on the form and inquiring whether the new restrictions could be accommodated. Johnson responded by email, stating that Sentara could not accommodate the new restrictions and that Sentara should remove Wulff from the work schedule until Wulff submitted medical documentation showing that her restrictions had abated. Then, Sullivan, along with Vice President of Human Resources Charles Ramey, Employment Manager Jane Velarde, and Human Resource employee Susan Reiss, jointly considered whether there was any way that Sentara could accommodate Wulff's new restrictions. This group ultimately reached a consensus that there was simply no reasonable accommodation that would enable Wulff to work with the new

---

work, absent his doctor's approval."). In any event, Wulff's "self-serving opinion [about her restrictions without] . . . objective corroboration" does not permit her to avoid summary judgment. Williams v. Giant Food, Inc., 370 F.3d 423, 433 (4th Cir. 2004). Claiming to have such objective corroboration, Wulff points to the records from the March 24 appointment, which she contends show that the form her physician's assistant filled out that day overstated her restrictions and that the restrictions had actually not changed at all. However, Sentara did not have these records in its possession at any relevant time. Moreover, contrary to Wulff's contention, the records indicate that her condition was getting worse. Specifically, the records indicate that Wulff's left arm is "still numb and tingly" but that she "now" has pain in her shoulder as well as her arm, suggesting that the shoulder pain was a new development. J.A. 127 (emphasis added).

4

restrictions. Accordingly, Velarde called Wulff to inform her that she would remain off the work schedule until her restrictions abated.[3]

Several months later, Wulff's attorney notified Sentara that Wulff's restrictions had been lifted, and, through her attorney, Sentara offered Wulff the opportunity to return to work. Wulff never responded to this offer. (The record reveals that on or about April 21, 2010, Wulff applied for a nursing position at a different facility and indicated in her application that all of her work restrictions had abated. Nevertheless, Wulff never sought to return to Sentara.)

Wulff filed an action in the Eastern District of Virginia for failure to accommodate, discriminatory discharge, and retaliatory discharge under the ADA. Following discovery, the district court granted Sentara's motion for summary judgment. With regard to Wulff's claims for failure to accommodate and discriminatory discharge, the district court concluded that the undisputed evidence showed that Wulff could not perform the essential functions of her position, even with a

---

[3] The parties dispute whether this action was a "termination" or decision to remove Wulff from the work schedule temporarily. For the purposes of this appeal, we will assume that the action was an adverse employment action within the meaning of the ADA's anti-discrimination and retaliation provisions.

reasonable accommodation (of which there were none).  Therefore, the court further concluded that, as a matter of law, Wulff was not a "qualified individual" protected by the ADA.  42 U.S.C. §§ 12111(8) & 12112.  With regard to Wulff's retaliatory discharge claim, the district court concluded that the undisputed evidence showed that Sentara terminated Wulff because of her inability to perform the functions of her job and that Wulff produced no evidence that this reason was pretextual.  Wulff now appeals.

II.

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court.  Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008).  Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Id.  In determining whether a genuine issue of material fact exists, we view the evidence in the light most favorable to the non-moving party.  Id.  Having fully considered Wulff's claims, we are constrained to the view that the district court did not err in granting summary judgment.

A.

6

With regard to Wulff's failure to accommodate claim, Wulff must establish several prima facie elements, one of which is that, with reasonable accommodation, she could perform the essential functions of the position. Rhoads v. FDIC, 257 F.3d 373, 387 n. 11 (4th Cir. 2001). The district court, properly viewing the evidence in the light most favorable to Wulff, concluded as a matter of law that no reasonable accommodation existed that would have enabled Wulff to perform the essential functions of her position, and, therefore, she could not establish her prima facie case. Wulff challenges this conclusion, contending that she generated a genuine dispute of material fact as to whether she was able to perform the essential functions of her position with a reasonable accommodation. However, the record does not support her contention.

In her deposition, Wulff listed numerous functions of her position that required the ability to lift, push, or pull some amount of weight. For example, Wulff testified that she was required to transport patients between rooms and stabilize patients who were unsteady on their feet. She also acknowledged that, in emergency situations, she could be required to lift patients and that her restrictions prevented her from doing so in accordance with Sentara's back-safety guidelines. Moreover, Wulff's own expert witness testified that a nurse who was unable

to lift any weight would be unable "to perform the regular functions of an emergency nurse." J.A. 547. Therefore, under the restrictions noted on the March 24 form, Wulff was unable to perform the essential functions of her position, and she does not suggest any reasonable accommodation that would have allowed her to do so. Accordingly, she cannot establish one of the elements of her prima facie case.

Wulff attempts to avoid this conclusion by arguing that the March 24 form was incorrect or misleading and that it overstated her actual restrictions. Wulff contends that the "No lifting/carrying 0-20 lbs." restriction is ambiguous and that it could be interpreted to state that she was still able to lift up to 10 pounds. However, the form clearly states that Wulff was incapable of lifting or carrying any weight within the range of zero to twenty pounds; i.e., she could not lift or carry at all.[4] If Wulff's physician's assistant believed that Wulff's lifting restriction did not fit within one of the ranges listed on the form, she could have noted that point in the "comments" section

---

[4] Wulff contends that there is evidence in the record that the lifting/carrying restriction on the March 24 form applied only to her left arm. Even assuming that Wulff's contention is correct, a restriction against lifting or carrying at all with her left arm, coupled with the other restrictions on that form such as no pushing or pulling and the inability to work above her shoulders, would fatally undermine her contention that a genuine dispute of material fact existed as to whether Wulff could perform the essential functions of her position.

8

of the form. Needless to say, as well, Wulff (who apparently had the form in her possession for a week before she delivered it to her employer) could have insisted that her physician's assistant so indicate, but she never did.

Wulff next attacks the March 24 form by claiming that Sentara did not believe that the restrictions noted on that form were accurate. Again, the record does not support Wulff's contention. In discovery, Wulff generated no evidence tending to show that the Sentara management and human resources personnel reviewing her circumstances questioned the accuracy of the restrictions noted on the March 24 form. To the contrary, the undisputed evidence shows that Ramey and Johnson, who were most directly involved as the ultimate decision-makers regarding Wulff's ability to perform the essential functions of her job as an emergency room clinical nurse, accepted the restrictions on that form as accurate, as they were entitled to do.[5]

---

[5] Wulff points to an April 5, 2010, email from Employment Manager Jane Velarde to Ramey stating that Wulff has been "working with these same accommodations since November," J.A. 116, and contends that this email shows that Sentara believed her restrictions had not changed. However, this email simply notes that the accommodations Wulff requested had not changed. It does not suggest that Wulff's restrictions were unchanged; the contrary is plainly evident. Wulff also points to testimony and notes from Velarde where Velarde suggests that Wulff's accommodations "had just gone on indefinitely," J.A. 436, to argue that Sentara ceased accommodating Wulff because of the duration of the accommodations, not because of Wulff's increased restrictions. However, Velarde's testimony does not indicate
(Continued)

9

In summary, Wulff's attempts to discredit the form that her physician's assistant completed (and thus Sentara's reliance on the form in its decision to remove Wulff from the work schedule) are unavailing; those attempts do not persuade us that the district court erred in relying on the form in concluding that Wulff has failed to generate a genuine dispute of material fact critical to her ability to support her prima facie case. We agree with the district court's assessment, namely, that the form imposed restrictions that prevented Wulff from performing the essential functions of her position, and no reasonable accommodation existed that would have enabled her to do so. Therefore, Wulff fails to support an essential element of her prima facie case.

---

that Sentara ceased accommodating Wulff because the accommodations "had just gone on indefinitely," but, rather, that the indefinite duration of the accommodations led Sentara to "request that she get a new note and we start fresh." Id. There is no indication in the record that if, indeed, Wulff's physician's assistant had simply reiterated in the March 24 form the extant restrictions on Wulff's capacity, Sentara's accommodation of Wulff's left arm impairment would not have continued as it had for seven months.

Rather than confront these inconvenient facts, Wulff's arguments have attempted to cast a burden on Sentara to go beyond the form that Wulff herself delivered to her employer. See Appellant's Brief at 25 ("Velarde did not suggest that Wulff should then obtain a revised Capacities Form in order to keep her job."); id. at 26 ("[Sentara] made no effort to further ascertain Wulff's doctors' intentions."). Like the district court, we find her arguments unpersuasive.

10

B.

We turn next to Wulff's discriminatory termination claim. To establish a prima facie case of discriminatory termination under the ADA, Wulff must establish several elements, including that she is within the ADA's protected class. Haulbrook v. Michelin North America, 252 F.3d 696, 702 (4th Cir. 2001). The district court found that Wulff failed to produce evidence to support this element. We agree.

To be within the ADA's protected class, one must be "a qualified individual" with a disability. 42 U.S.C. § 12112. A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). As explained above, viewing the evidence in the light most favorable to Wulff, she was unable to perform the essential functions of her position. Therefore, the district court was correct to determine, as a matter of law, that she was not a "qualified individual" and could not support a prima facie case of wrongful discharge. 42 U.S.C. § 12111(8); Haulbrook, 252 F.3d at 702.

C.

11

We turn now to Wulff's retaliatory termination claim. To establish a prima facie case of retaliatory termination, Wulff must produce evidence that (1) she engaged in protected activity, (2) Sentara took adverse action against her, and (3) there is a causal connection between the protected activity and the adverse employment action. Haulbrook, 252 F.3d at 706. If Wulff supports her prima facie case, then Sentara must articulate a legitimate and nonretaliatory reason for the termination. Id. Once Sentara does so, the burden shifts back to Wulff to show that Sentara's reason is pretextual. Id. The district court assumed that Wulff established her prima facie case of retaliation but granted summary judgment because Sentara explained that it removed Wulff from the schedule because she was unable to perform the essential functions of her job, and Wulff produced no evidence that this explanation was pretextual. We find the district court's analysis and conclusion to be correct.

Sentara explained that it removed Wulff from the schedule because the medical form she submitted imposed restrictions that prevented her from performing the essential functions of her job.[6] As explained above, Wulff's attempts to

---

[6] This explanation is bolstered by the fact that Sentara gave Wulff the opportunity to return to work when it learned that her restrictions had been lifted. J.A. 82 (expressing (Continued)

12

discredit Sentara's explanation are unsuccessful.  Thus, Wulff has produced no evidence that Sentara's explanation was pretextual, and the district court's entry of summary judgment on Wulff's retaliatory termination claim was correct.

III.

For the foregoing reasons, we affirm the district court's entry of summary judgment in favor of Sentara.

AFFIRMED

---

Sentara's willingness "to offer Ms. Wulff a position as an ER nurse in the hospital's Emergency Department."). Tellingly, Wulff was unable in her brief or at oral argument to provide a plausible explanation for her failure to avail herself of Sentara's offer.